THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FLOYD E. MURPHY, Defendant-Appellant.

Fifth District     No. 5—99—0535

Opinion filed May 22, 2001.—Rehearing denied June 6, 2001.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Garnati, State's Attorney, of Marion (Norbert J. Goetten, Stephen

E. Norris, and Trent M. Marshall, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPKINS delivered the opinion of the court:

Floyd E. Murphy (defendant) appeals from convictions of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 1998)) and aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1)(i) (West 1998)). Defendant claims that he was deprived of a fair trial due to the admission of hearsay evidence concerning the child victim's statements made to a police officer and the child's mother. Defendant also argues that the trial court abused its discretion when sentencing defendant because the court failed to take into account certain mitigating factors. Additionally, defendant argues that he is entitled to credit for time served in jail prior to posting bond. The State concedes that defendant is entitled to credit for time served. Finally, defendant argues that under the recent United States Supreme Court case of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), his consecutive sentences must be vacated and the cause remanded for resentencing because the facts that increased his sentence from concurrent to consecutive terms of imprisonment were not charged in the charging instrument or submitted to the jury for proof beyond a reasonable doubt. We affirm on all issues, except we modify defendant's sentence to include credit for time served.

## I. FACTS

The victim in this case (P.C.) was 10 years old when she alleged that defendant molested her. P.C., her sister, and her mother lived next door to defendant's family. Before the jury trial, the State notified defendant, pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10 (West 1998)), that it intended to introduce statements P.C. made to Detective Brian Thomas. Thereafter, a reliability hearing was held, in which Detective Thomas testified. P.C. did not testify at the reliability hearing. The trial court determined that the time, contents, and circumstances of P.C.'s statements to Detective Thomas were sufficiently reliable to allow him to testify about those statements.

At the trial, P.C. testified that on October 18, 1997, P.C., her sister, defendant's wife (Rebecca), the neighbors' children (Christian, Raymond, and Katie), and defendant were in the living room of defendant's home watching movies for several hours before the incident occurred. In the record, Christian is also referred to as "Christina" by certain witnesses. For ease of reading, we will simply refer to the child as Christian. P.C. testified that she fell asleep on the living room floor next to Raymond and Christian. She testified that Raymond was lying

on the floor between her and the couch, where defendant was lying. P.C. acknowledged that when she spoke to Detective Thomas in the early morning hours after the incident, she described the sleeping positions of the various people differently, stating that Raymond was on the couch with defendant and that Christian was lying on a recliner.

At the trial, P.C. testified that after she fell asleep, defendant woke her up when he pulled the pillow from underneath her, stuck his finger in her, and kissed her "boobs." P.C. testified that when defendant did this, he told her not to tell anyone. P.C. then told defendant that she had to use the bathroom. She testified that she went into the bathroom, straightened her clothing, and then went into Rebecca's room to tell her what happened. P.C. testified that when she was talking to Rebecca, she was crying, upset, and scared. P.C. testified that Rebecca immediately went into the living room, where defendant was lying on the couch, pretending to be asleep. P.C. testified that defendant denied P.C.'s allegations, and then he left. P.C. and Rebecca went to P.C.'s house to tell her mother (Glenda) what had happened, and then Rebecca, P.C., and Glenda went to the police station. P.C. testified that after she talked to the police officer, she went to the hospital. P.C. identified defendant as the person who molested her.

On cross-examination, P.C. again testified that defendant lifted up her top and kissed her breasts, unbuttoned her pants, and placed his finger in her "private part." P.C. also testified on cross-examination that she told the nurse at the emergency room the same sequence of events.

Rebecca's testimony corroborated P.C.'s testimony.

P.C.'s mother, Glenda, testified that during the early morning hours of October 18, 1997, Rebecca and P.C. came to her house. Glenda testified that Rebecca told her that they needed to go to the police station because defendant had "hurt" P.C. At this time, P.C. was crying and shaking. Glenda testified that she went with Rebecca and P.C. to the police station and that she stayed with P.C. during the first part of the interview with Detective Thomas and a policewoman. Glenda testified that Detective Thomas asked P.C. what had happened. Glenda stated, "[P.C.] wouldn't really say anything, so they told her that she could whisper it in my ear and then I could tell them [what she said]." Glenda described what P.C. whispered to her: "[Defendant] held his hand on her mouth, and he licked her boobs, and then he put his hands down in her pants, and that's all she said." After Glenda told the police officers what P.C. whispered, Glenda left the interview room at Detective Thomas's request. After P.C. talked to the officers alone, Glenda took her to the hospital emergency room.

On cross-examination, Glenda repeated her testimony regarding

the statements P.C. whispered to her at the police station during the interview with Detective Thomas.

Detective Thomas testified that when he first asked P.C. about what had happened, she was reluctant to talk to him, so he asked P.C. to tell her mother what had happened. According to Detective Thomas, P.C. whispered something into her mother's ear, and then her mother told him, "[Defendant] held his hand on her mouth, and he licked her boobs, and then he put his hands down in her pants." Detective Thomas testified that he explained to P.C. that he understood that she did not want to talk to him about the incident but that he needed to hear it from her and not just from her mother. Detective Thomas testified that he then interviewed P.C. without her mother present, and she told him the same sequence of events that she related earlier through her mother.

Dr. Wroten McQuirter testified that he was the doctor on call at the emergency room when P.C. and her mother arrived. Dr. McQuirter described what P.C. said when he asked her what had happened:

"[S]he was at a neighbor's house, um, and that she had been laying [sic] on the floor asleep, and about two o'clock or so she was awakened from sleep by [defendant] and [defendant] had put his left hand across her mouth and had opened her pants with his right hand and had digitally manipulated her genitals."

Dr. McQuirter testified that when he performed a vaginal examination on P.C., he found a lesion and discoloration on P.C.'s vaginal area and that his physical findings were consistent with the type of abuse she described.

Gail Meiling, a clinical counselor, testified for the defense that she interviewed P.C. about four months after the incident. Meiling testified that P.C. was very hesitant to talk to her but that P.C. finally told her that on the night of the incident, she was sleeping on the floor next to defendant, who was on the couch. According to Meiling, P.C. told her that she was awakened by defendant grabbing her and pulling her up onto the couch, where he unbuttoned her pants and stuck his finger down her pants. Meiling described P.C.'s statement made during the interview with her as "remarkably consistent" with P.C.'s statements made before that interview.

Defendant was convicted of both predatory criminal sexual assault and aggravated criminal sexual abuse. The presentence report filed for defendant's sentencing hearing indicated that defendant was 35 years old at the time of the offense, that he had no prior criminal convictions, that he was the father of two children (ages seven and four), and that he was employed as a laborer. At the sentencing hearing, a child therapist, Judith Durham, testified that she counseled P.C. about

50 times prior to the hearing. Durham testified about the adverse side effects P.C. was experiencing as a result of the sexual abuse.

On July 26, 1999, the trial judge entered a verbal order in which he explained defendant's sentence and the various factors he used in setting the appropriate punishment for defendant. The judge found as mitigating factors defendant's lack of a criminal history and his ability to financially compensate the victim, and the judge found as aggravating factors the necessity to deter others from similar crimes, defendant's lack of remorse, and the gravity of the offense. Defendant was eligible for a prison sentence of 6 to 30 years for the Class X felony of predatory criminal sexual assault and three to seven years for the Class 2 felony of aggravated criminal sexual abuse. The trial court sentenced defendant to consecutive terms of 10 years' imprisonment for the predatory criminal sexual assault conviction and five years' imprisonment on the aggravated criminal sexual abuse conviction.

Defendant filed a motion to reconsider his sentence, alleging that his sentence was improper because the trial court failed to consider certain mitigating factors, including defendant's family situation and defendant's potential for rehabilitation. The trial court denied the motion to reconsider sentence, and this appeal followed.

## II. ANALYSIS

### A. Hearsay Statements to Victim's Mother

Defendant argues that he was deprived of a fair trial where Glenda, P.C.'s mother, testified about statements P.C. whispered to her at the police station. Defendant contends that Glenda's testimony, which involved P.C.'s out-of-court statements about sexual abuse by defendant, entitled him to a hearing outside the presence of the jury, pursuant to section 115—10, and that the hearing should have been held prior to Glenda's testimony, so that the court could determine the reliability of those statements. Defendant claims that since the statements were admitted without the necessary hearing, we must reverse his convictions and remand for a new trial.

■ Section 115—10 provides, in pertinent part, as follows:

"(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13 *** at the time the act was committed, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961 ***, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and

(2) testimony of an out of court statement made by the victim describing any complaint of such act or matter or *** offense which is the subject of a prosecution for a sexual or physical act against that victim.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child *** either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement; and

(3) In a case involving an offense perpetrated against a child under the age of 13, the out of court statement was made before the victim attained 13 years of age or within 3 months after the commission of the offense, whichever occurs later, but the statement may be admitted regardless of the age of the victim at the time of the proceeding." 725 ILCS 5/115—10 (West 1998).

■ The State responds that defendant has waived his right to our review of this issue by his failure to object to the testimony at the trial, by eliciting virtually the same testimony from the victim's mother during her cross-examination, and by failing to raise the issue in a written posttrial motion. We agree. When a defendant fails to object at the trial to hearsay evidence on the basis of the failure to conduct a section 115—10 hearing and when that defendant also fails to include this issue in a written posttrial motion, then the issue is waived for appellate review. *People v. Roman*, 260 Ill. App. 3d 436, 443 (1992). Additionally, when a defendant fails to object to testimony and then elicits the same or similar testimony on cross-examination, any error in admitting that testimony is waived. *People v. Heidelberg*, 190 Ill. App. 3d 743, 746 (1989). In the case at bar, the State correctly points out that defense counsel did not object to Glenda's testimony during the trial, he elicited testimony from Glenda on cross-examination that is essentially the same testimony about which he now complains, and he failed to raise this issue in his motion for new trial. Defendant has waived his right to our review of this issue.

We note, however, that even if the issue is not deemed waived, the trial court did review Glenda's potential testimony during the section 115—10 hearing, as Detective Thomas testified at that hearing regarding the method by which he had obtained P.C.'s out-of-court statement. Glenda's testimony at the trial was purely cumulative to the testimony of P.C., Detective Thomas, and the emergency room physician.

## B. Necessity of Child Victim Testifying at Reliability Hearing

■ In a supplemental brief, defendant argues that the trial court erred in ruling upon the admissibility of the victim's statements to Detective Thomas without requiring P.C. to testify at the section 115—10 hearing. Defendant admits that the Fourth District Appellate Court has ruled in two separate cases that the child witness does not have to testify at the section 115—10 hearing because the term "proceeding" in the statute refers to the trial rather than the reliability hearing: *People v. Back*, 239 Ill. App. 3d 44 (1992), and *People v. Wilson*, 246 Ill. App. 3d 311 (1993), which follows and adopts the ruling in *Back*. Defendant argues, however, that the analysis in the *Wilson* and *Back* cases is "seriously flawed."

In *Back*, the court allowed certain witnesses to testify regarding statements made to each of them by the child victim of a sexual assault. *Back*, 239 Ill. App. 3d at 51. The trial court made this ruling after a section 115—10 hearing in which the child victim did not testify. The defendant raised this issue for the first time at oral argument before the appellate court. *Back*, 239 Ill. App. 3d at 52. Since the defendant in *Back* did not raise the issue in a timely manner, the court found that the defendant waived review of the issue. *Back*, 239 Ill. App. 3d at 52. However, the court addressed the issue in order "to provide guidance to legal professionals about the procedural requirements for reliability hearings regarding a child victim's out-of-court statements." *Back*, 239 Ill. App. 3d at 53.

Similarly, defendant in the case at bar did not raise this issue in a timely manner: he did not raise the issue in the trial court but waited to raise it via a supplemental brief filed with this court. Thus, defendant has technically waived the issue on review. See *Roman*, 260 Ill. App. 3d at 443; *Heidelberg*, 190 Ill. App. 3d at 746. However, since the waiver rule is a limitation on the parties and not on the jurisdiction of the courts (*Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11 (1996)), we, too, choose to discuss the issue in the hopes that it will provide some guidance.

The court in the *Back* case held that the term "proceeding," as used in section 115—10, "refers to trial proceedings, not the reliability hearing." *Back*, 239 Ill. App. 3d at 53. The court based its decision on the statute's direction that the focus of the reliability hearing is to be on the timing, content, and circumstances surrounding the child victim's statements. 725 ILCS 5/115—10 (West 1998). "The child's testimony at the reliability hearing is not necessary to enable the trial judge to evaluate whether there were sufficient safeguards of reliability when the statements were made." *Back*, 239 Ill. App. 3d at 54.

Defendant argues that this reasoning is flawed because the percep-

tions of the child are very important to the determination of whether sufficient safeguards of reliability exist to allow the testimony. Defendant urges us to find that the statute requires the court to hear testimony from the child as to the child's perceptions of the setting in which the statements were made and the methods employed by the person to whom the child spoke. This argument fails because it is not required by the plain and unambiguous language of the statute and, moreover, because it would add an unnecessary layer of procedure to these statutory reliability proceedings.

The statute plainly directs the court to determine "that the time, content, and circumstances of the statement provide sufficient safeguards of reliability." 725 ILCS 5/115—10(b)(1) (West 1998). The legislature did not presume to direct the court to employ any particular method in reaching the reliability decision but instead left that determination to the discretion of the trial judge, knowing that the specific circumstances of each case will dictate varying degrees and methods of proof. Since the burden of persuasion is upon the State as the proponent of the statements (*People v. Zwart*, 151 Ill. 2d 37, 43 (1992)), it will be incumbent upon the State in each case to decide exactly how to convince the judge that sufficient safeguards of reliability exist to allow the testimony about the child's statements. We agree with the court in the *Back* case that there is no statutory requirement that the State call the child as a witness in the reliability hearing.

Additionally, case law from both the appellate court and our supreme court indirectly supports a finding that the child does not have to testify at the reliability hearing. In *People v. West*, 158 Ill. 2d 155 (1994), and *People v. Hubbard*, 264 Ill. App. 3d 188 (1994), each court considered a situation in which the child victim did not testify at the reliability hearing. While not specifically addressing the issue of the necessity of the child victim's testimony at the reliability hearing, both cases support the proposition that a trial court is capable of making a reliability determination without the testimony of the child. In *People v. Bowen*, 183 Ill. 2d 103 (1998), while discussing section 115—10, the court noted, "[U]nless a finding of unavailability is made, statements admitted under section 115—10 can never serve as substitutes for trial testimony, because section 115—10 makes the introduction of the statements expressly contingent upon the child's production for direct and cross-examination *at trial*." (Emphasis added.) *Bowen*, 183 Ill. 2d at 114-15. Clearly, within the context of the *Bowen* case, the supreme court found that the testimony of the child is essential at the trial, not at the reliability hearing.

Furthermore, as the State points out, since the statute refers to

only one "proceeding" at which the child must testify, if that proceeding is the reliability hearing rather than the trial, a logical argument could be made that the requirements of the statute are met if the child testifies at the reliability hearing but not the trial. Such an interpretation would not protect a defendant's confrontation rights at trial. We have a duty to avoid construing a statute to defeat the purpose of the legislation or yield an absurd or unjust result. *People v. Latona*, 184 Ill. 2d 260, 269 (1998).

For all of these reasons, we hold that the trial court did not err in allowing Detective Thomas to testify about P.C.'s statements to him even though P.C. did not testify at the reliability hearing.

## C. Consecutive Sentencing

■ We next address defendant's argument that the trial court erred, under the recent Supreme Court decision of *Apprendi*, in sentencing him to consecutive terms of imprisonment for his two sexual offense convictions. In *Apprendi*, the United States Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[ ] and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. The corollary of this rule applies with equal force: the legislature cannot constitutionally remove from the jury's consideration the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed, as those facts must be established before a jury by proof beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363. In *Apprendi*, the Court found unconstitutional a statute that allowed a trial judge to sentence a defendant to an extended term of imprisonment based upon a finding that the defendant's crimes were committed with the purpose " 'to intimidate an individual *** because of race, color, gender, handicap, religion, sexual orientation[,] or ethnicity,' " commonly referred to as a hate-crime law. *Apprendi*, 530 U.S. at 469, 147 L. Ed. 2d at 443, 120 S. Ct. at 2351, quoting N.J. Stat. Ann. § 2C:44—3(e) (West Supp. 1999-2000).

Defendant argues that his consecutive sentences must be vacated because the statute under which the judge imposed the consecutive sentences "does not include the requirement that any of the facts which mandate consecutive sentences (single course of conduct) be pled or proved beyond a reasonable doubt to a jury." To the extent that we can decipher this argument, we understand defendant to argue that because the judge, rather than the jury, determined that defendant's crimes were committed during a single course of conduct,

defendant's consecutive sentences run afoul of the principles set forth in *Apprendi*. We disagree. Moreover, we address this issue even though defendant did not raise it in the trial court, because defendant challenges the constitutionality of the statute under which he was sentenced, making waiver principles inapplicable. See *People v. Wooters*, 188 Ill. 2d 500 (1999).

The statute under which the trial court ordered defendant's sentences to run consecutively provides, in relevant part, as follows:

"(a) When multiple sentences of imprisonment are imposed on a defendant at the same time, *** the sentences shall run concurrently or consecutively as determined by the court. *** *The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless*[ ] one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where *the defendant was convicted of a violation of Section 12—13, 12—14, or 12—14.1 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively*. Sentences shall run concurrently unless otherwise specified by the court.

(b) The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record; *except that no such finding or opinion is required when multiple sentences of imprisonment are imposed on a defendant for offenses that were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, and one of the offenses for which the defendant was convicted was* a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or when the defendant was convicted of *a violation of Section 12—13, 12—14, or 12—14.1 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively*."

(Emphasis added.) 730 ILCS 5/5—8—4(a), (b) (West 1998).

Under the above-quoted version of section 5—8—4 of the Unified Code of Corrections, which was in effect at the time of defendant's sentencing, when a defendant is convicted of multiple offenses and any of those offenses is one of the three listed sexual offenses, including predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 1998)), of which defendant in the instant case was convicted, the trial court is required to sentence the defendant to consecutive

sentences. Subsection (a) applies where the crimes "were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5—8—4(a) (West 1998). Subsection (b) applies where the crimes "were *not* committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." (Emphasis added.) 730 ILCS 5/5—8—4(b) (West 1998). Contrary to defendant's argument, the trial court was not required to find that defendant committed his crimes during a single course of conduct, because the legislature has eliminated that determination when the defendant is convicted of multiple offenses and one of those offenses is one of the listed sexual offenses. Under these circumstances, the sentencing is required to be consecutive without any further factual consideration.

Since the trial court was mandated by statute to impose consecutive sentences upon defendant under these circumstances, there is nothing in the legislative scheme to offend the principles declared in *Apprendi*. Defendant's argument—"the trial court determined that consecutive sentences were required under [section] 5—8—4(a) ***, which mandates consecutive sentences for offenses that were committed as part of a single course of conduct"—is inaccurate. First, the trial court stated only that defendant's terms of imprisonment were to be served consecutively for the reason that the "sentencing in this case is a mandatory consecutive sentence." The judge made no finding as to a single course of conduct, because a thorough reading of section 5—8—4 clearly demonstrates that, whether the crimes were committed as part of a single course of conduct or not, the sentencing is to be consecutive if at least one of the multiple crimes is one of the listed sexual offenses.

The legislative scheme found to be unconstitutional in *Apprendi* is entirely different from the legislative scheme controlling the sentencing in the case at bar. In *Apprendi*, the defendant was convicted of unlawful possession of a firearm, which was punishable by imprisonment for 5 to 10 years. *Apprendi*, 530 U.S. at 468, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. Under a separate statute, the defendant faced the possibility of an extended term of an additional 10 years' imprisonment based upon the trial court's finding, by a preponderance of the evidence, that the defendant's crime was improperly motivated. *Apprendi*, 530 U.S. at 468-69, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351.

In contrast, under the consecutive sentencing statute in the case at bar, the trial court did not have to make any finding on any fact not already proved to a jury beyond a reasonable doubt. The jury entered guilty verdicts on the charges of predatory criminal sexual assault of a

child (720 ILCS 5/12—14.1 (West 1998)) and aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1)(i) (West 1998)). Based upon those convictions, the trial court had no choice but to sentence defendant to consecutive terms of imprisonment.

*Apprendi* teaches us that it is both proper and constitutional for judges "to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (Emphasis in original.) *Apprendi*, 530 U.S. at 481, 147 L. Ed. 2d at 449, 120 S. Ct. at 2358. We interpret the term "statute" in the above-quoted passage to necessarily include the entire statutory scheme within which a defendant may be sentenced. Therefore, in the instant case, "within the range prescribed by statute" includes consecutive sentencing for defendants convicted of multiple offenses, one of which is a sexual offense listed in sections 5—8—4(a) and.(b). We read *Apprendi* to limit judges in sentencing defendants to extended terms of imprisonment only if two conditions converge: first, that the defendant does not have the right to have a jury determine certain facts that make him eligible for a longer term of imprisonment and, second, that a judge makes that finding upon a standard of proof lower than beyond a reasonable doubt. Conversely, if the sentencing scheme that provides for an enhanced term of imprisonment does not require the trial judge to make a factual finding not already presented to a jury for proof beyond a reasonable doubt, then the constitutional limitations identified in *Apprendi* do not apply.

Thus, we hold that the sentencing provisions in section 5—8—4 that apply to defendant's situation—specifically, the requirement that the trial court impose consecutive terms of imprisonment on defendants convicted of multiple crimes, one of which is a listed sexual offense—do not offend the constitutional principles set forth in *Apprendi*.

The rationale expressed by the Court majority in *Apprendi* supports our ruling. The majority distinguished prior-conviction cases from the statute it found to be unconstitutional. "[T]here is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt[ ] and allowing the judge to find the required fact under a lesser standard of proof." *Apprendi*, 530 U.S. at 496, 147 L. Ed. 2d at 458-59, 120 S. Ct. at 2366. Under the statutory scheme.at issue here, defendant exercised his right to a jury trial, and the jury found him guilty beyond a reasonable doubt of all of the elements of both crimes. Under these circumstances, there is no effective differ-

ence between guilty verdicts rendered against defendant for these specific sexual crimes, which resulted in a longer term of imprisonment via consecutive sentencing, and prior jury verdicts of guilt leading to a longer term of imprisonment. See *People v. Lathon*, 317 Ill. App. 3d 573 (2000) (the First District Appellate Court held that the sentencing statute that requires the court to increase the sentence based upon prior convictions (730 ILCS 5/5—5—3(c)(8) (West 1998)) is constitutional under *Apprendi*).

Since the Supreme Court issued its decision in *Apprendi*, numerous Illinois cases have interpreted *Apprendi* and its effect on our sentencing statutes. Some of the Illinois cases construing *Apprendi* support our holding on the consecutive sentencing issue. Some do not.

Several courts have found unconstitutional the provision in section 5—8—4 that requires the court to impose consecutive sentences upon findings that the defendant was convicted of a Class X or Class 1 felony and that the defendant inflicted severe bodily injury (730 ILCS 5/5—8—4(a), (b) (West 1998)). *People v. Mason*, 318 Ill. App. 3d 314 (2000); *People v. Carney*, 317 Ill. App. 3d 806 (2000); *People v. Clifton*, 321 Ill. App. 3d 707 (2000). Unlike the severe-bodily-injury provision of section 5—8—4, the requirement of consecutive sentencing for multiple offenses that include at least one of the listed sexual offenses does not require the judge to make factual findings that lead to an enhanced sentence.

Several courts have determined unconstitutional under *Apprendi* the provision requiring an enhanced sentence if the crime was "exceptionally brutal or heinous" (730 ILCS 5/5—5—3.2 (West 1998)). *People v. Chanthaloth*, 318 Ill. App. 3d 806 (2001); *People v. Nitz*, 319 Ill. App. 3d 949 (2001); *People v. Beachem*, 317 Ill. App. 3d 693 (2000). In contrast, the sentencing statute at issue in the case at bar does not require a judicial finding that the crime was exceptionally brutal or heinous.

In *People v. Harden*, 318 Ill. App. 3d 425 (2000), the defendant was convicted of multiple crimes, including aggravated criminal sexual assault, one of the listed sexual offenses that trigger mandatory consecutive sentencing under section 5—8—4. The First District Appellate Court held a former version of section 5—8—4(a) (730 ILCS 5/5—8—4(a) (West 1994)) unconstitutional under *Apprendi*. The consecutive-sentencing provisions in the version of section 5—8—4 that was in effect at the time of defendant's 1999 sentencing are identical to those in the 1994 version, except that after 1994 the legislature added the provision in subsection (b) that allows the court to sentence a defendant convicted of multiple offenses, including one of the listed sexual offenses, to consecutive terms of imprisonment without a find-

ing that it is necessary to protect the public. 730 ILCS Ann. 5/5—8—4, Historical & Statutory Notes, at 48 (Smith-Hurd Supp. 2000) (discussing Pub. Act 90—128, eff. July 22, 1997).

The court in *Harden* explained its decision as follows:

> "Since the Supreme Court's decision was issued in *Apprendi*, two divisions of the First District of this court have declared that section 5—8—4(a) is unconstitutional in that it allows the trial court to impose consecutive sentences upon making one or more factual findings, namely, that offenses were committed as part of a single course of conduct and, in some cases, that the defendant inflicted severe bodily harm. *Clifton*, 321 Ill. App. 3d at 724-27; *People v. Carney*, 317 Ill. App. 3d 806, 812-13 (2000). In doing so, the courts in both *Clifton* and *Carney* acknowledged that an order that sentences run consecutively does not enhance any individual sentence beyond the prescribed statutory maximum. Both courts concluded, however, that, under *Apprendi*, it is the effect of a statute, rather than its form, that controls and that the effect of an order requiring that sentences run consecutively is to increase the defendant's sentence. *Clifton*, 321 Ill. App. 3d at 725-26; *Carney*, 317 Ill. App. 3d at 813. ***
>
> *** 
>
> *** We *** agree with the courts in *Clifton* and *Carney* that the practical effect of section 5—8—4(a) is to increase the period of time which the defendant will spend incarcerated. *** As such, '[i]t would be anomalous to hold that where a statute mandates the enhancement of an individual sentence the enhancement factors must be tried by the jury while a statute requiring an extended period of service by requiring consecutive sentences would remain outside the purview of the *Apprendi* rationale.' *Clifton*, 321 Ill. App. 3d at 726." *Harden*, 318 Ill. App. 3d at 428-29.

After *Harden* was decided, another division of the First District Appellate Court decided the same issue with opposite results. In *People v. Lucas*, 321 Ill. App. 3d 49 (2001), the court construed the version of section 5—8—4 that we construe herein (730 ILCS 5/5—8—4 (West 1998)). However, the *Lucas* court did not mention or apply subsection (b) of that statute. Instead, the court reasoned that *Apprendi* does not apply to consecutive sentencing because " '[c]onsecutive sentences determine only the manner in which the sentence for each individual offense is to be served and have nothing to do with the length of each discrete sentence.' " *Lucas*, 321 Ill. App. 3d at 56, quoting *People v. Primm*, 319 Ill. App. 3d 411, 428 (2000), citing *Thomas v. Greer*, 143 Ill. 2d 271, 278 (1991). The court in *Lucas* followed *Primm* and other cases finding consecutive sentencing under section 5—8—4 constitutional and declined to follow the cases reaching the opposite conclu-

sion—*Clifton*, *Carney*, and *Harden*. See also *People v. Waldrup*, 317 Ill. App. 3d 288 (2000) (the court construed the 1998 version of section 5—8—4 and found it to be unconstitutional because it required the trial court to sentence the defendant to a greater term of imprisonment based upon the finding that the crimes were committed in a single course of conduct).

We agree with the result reached in *Lucas*, but we base our decision upon the alternative reason that the consecutive sentencing mandated by section 5—8—4 under these conditions does not require the trial court to make any additional factual findings that were not already submitted to the jury. Likewise, we disagree with the court in *Waldrup* that section 5—8—4 is unconstitutional. Finally, we agree with the reasoning of the court in *Harden* that consecutive sentencing must be viewed as increasing defendant's sentence, since the effect of serving the terms of imprisonment consecutively is that defendant will spend a longer period of time incarcerated. To the extent that our holding on this issue conflicts with other cases, we decline to follow the cases holding that consecutive sentences do not amount to a sentence enhancement under *Apprendi*. See *People v. Hayes*, 319 Ill. App. 3d 810 (2001); *People v. Maiden*, 318 Ill. App. 3d 545 (2001). Rather, consecutive sentencing under the circumstances presented in this case is simply a sentence enhancement that meets the guidelines set forth in *Apprendi*.

In summary, we hold that the sentencing statute in effect at the time of defendant's sentencing passes the constitutionality tests set forth in *Apprendi*. Accordingly, the trial court did not err in sentencing defendant to consecutive terms of imprisonment.

### D. Trial Court's Consideration of Factors in Mitigation

■ Defendant claims that the trial court abused its discretion by sentencing him to excessive terms of imprisonment. Defendant concedes that his sentence is within the range allowed by law but claims that the court abused its discretion by not giving adequate consideration to the factors that he presented in mitigation. Defendant points out that he did not have any prior convictions at the time of his sentencing on these offenses, that he was employed, and that he is the father of two children.

A review of the record indicates that the trial court was aware of the factors in mitigation and considered those factors, together with the factors in aggravation presented by the State, when sentencing defendant to terms of imprisonment. Defendant's conviction of predatory criminal sexual assault of a child, a Class X felony, carries a possible term of 6 to 30 years' imprisonment. 720 ILCS 5/12—14.1(b)(1)

(West 1998); 730 ILCS 5/5—8—1(a)(3) (West 1998). Defendant's sentence of 10 years' imprisonment is within that range. Defendant's conviction of aggravated criminal sexual abuse, a Class 2 felony, carries a possible prison term of three to seven years. 720 ILCS 5/12—16 (West 1998); 730 ILCS 5/5—8—1(a)(5) (West 1998). Defendant's sentence of five years' imprisonment on the aggravated criminal sexual abuse conviction is within the allowable sentencing range.

Since the trial court is in the best position to fashion an appropriate sentence (*People v. O'Neal,* 125 Ill. 2d 291 (1988)), the court of review must give the sentencing court great deference and not overturn the sentence imposed unless there was an abuse of discretion (*People v. Carron,* 298 Ill. App. 3d 676 (1998)).

The record in the case at bar reveals that the trial court was aware of all factors relevant to sentencing and took those factors into account in reaching a sentencing decision that was not an abuse of discretion. Accordingly, we affirm defendant's sentence.

### III. Conclusion

We affirm defendant's conviction, but we modify defendant's sentence, pursuant to our authority under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), to include a credit of $5 per day against his $100 sexual assault fine for the 47 days he spent in custody prior to the revocation of his bond (see 725 ILCS 5/110—14 (West 1998)). The result of this credit is that it reduces defendant's sexual assault fine to zero.

Affirmed as modified.

GOLDENHERSH and MAAG, JJ., concur.