THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL S. JENNINGS, Defendant-Appellant.

Fifth District    No. 5—00—0482

Opinion filed October 16, 2003.

Daniel M. Kirwan and Lawrence J. O'Neill, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Allan Lolie, State's Attorney, of Shelbyville (Norbert J. Goetten, Stephen E. Norris, and Rebecca E. McCormick, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

On May 26, 1999, the defendant, Michael S. Jennings, was charged by information with one count of first-degree murder (720 ILCS 5/9—1(a)(1) (West 1998)) and one count of concealment of a homicidal death (720 ILCS 5/9—3.1(a) (West 1998)) in connection with the death of Thomas Beyers (the victim). A four-count indictment was later entered charging the defendant with four alternative counts of first-degree murder. The charges were consolidated for a jury trial. The case proceeded to a trial in the circuit court of Shelby County, after which a jury found the defendant guilty of second-degree murder and concealment of a homicidal death. The trial court sentenced the defendant to 15 years in the Department of Corrections for second-degree murder and a consecutive 5 years' imprisonment for concealment of a homicidal death. On appeal the defendant contends that (1) the appellate prosecutor lacked the authority to prosecute the defendant, so that the trial must be declared a nullity and the resulting judgment void, (2) he was entitled to have the jury instructed on involuntary manslaughter, (3) he was denied a fair trial due to the trial court's response to a question by the jury during deliberations, concerning the effect of finding the defendant guilty or not guilty of

first-degree murder, (4) the trial court erroneously believed that it was required to impose consecutive sentences, and (5) the sentences imposed were excessive in light of numerous factors presented in mitigation, the lack of significant factors in aggravation, and the defendant's potential for rehabilitation. We affirm.

## I. BACKGROUND

On May 19, 1999, a fisherman found the body of the victim floating in Lake Shelbyville. Chains and coffee cans filled with concrete were attached to the body. A police investigation revealed that the victim and the defendant's wife were having an extramarital affair and that the defendant and his wife were involved in the death of the victim. The defendant's wife ultimately pled guilty to first-degree murder. In exchange for her guilty plea and cooperation with police, the prosecutor agreed to ask for a sentence of no more than 45 years in the Department of Corrections.

As for the defendant, on May 26, 1999, in cause No. 99—CF—54 he was charged by information with first-degree murder and concealment of a homicidal death. The charging instruments were signed by Steve Friedel, a Shelby County assistant State's Attorney. On August 31, 1999, a four-count murder indictment was entered against the defendant in cause No. 99—CF—55. On September 29, 1999, an order was entered consolidating the causes for a jury trial under No. 99—CF—55.

Friedel represented the State at the first five pretrial hearings: first, a hearing on May 28, 1999, after the indictments were issued; second, the defendant's first appearance on June 2, 1999; third, the preliminary hearing on June 27, 1999; fourth, a pretrial conference on July 12, 1999; and fifth, a substitution-of-counsel hearing on September 3, 1999. Thereafter, the record indicates that Mr. Allan F. Lolie, Jr., of the State's Attorneys Appellate Prosecutor's office, took over the prosecution of the defendant.

Lolie's name first appears in the record on October 29, 1999, when he appeared on behalf of the State as "Special State's Attorney" at a pretrial conference. Also on that date, Lolie filed the State's "First Supplemental Answer to Defendant's Motion for Discovery." Prior to October 29, 1999, all motions and pleadings were served on Friedel, as indicated by the certificates of service contained in the record. After October 29, 1999, the certificates of service reflect service to Allan Lolie as "Special Prosecutor." Lolie filed motions on behalf of the State and responded to the defendant's numerous pretrial motions on behalf of the State. Lolie appeared on behalf of the State at all pretrial hearings held after September 3, 1999, including, *inter alia*, hearings

regarding numerous motions *in limine*, a motion to bar the imposition of the death penalty, a motion to declare the death penalty unconstitutional, a motion to suppress recorded conversations and evidence derived therefrom, and a motion to require the sentencing jury to make specific findings.

In this appeal, the State has filed a motion to take judicial notice of a document filed with the circuit court of Shelby County in which the State's Attorney appointed Allan Lolie, an employee of the appellate prosecutor's office, as an assistant State's Attorney. The defendant does not object but, rather, welcomes the introduction of the document, asserting that it supports his contention that the appellate prosecutor lacked the authority to prosecute this case. With no objection, we hereby grant the State's motion to take judicial notice of the document.

The document is divided into two separate portions. It bears a file-stamp date of August 13, 1999, but lacks a case number. A review of the record in this case shows that it was not made a part of the instant record. The top portion of the document is titled "Appointment of Special Assistant State's Attorney." It is signed by the State's Attorney of Shelby County and states, "I *** appoint Allan F. Lolie, Jr.[,] of the State's Attorneys Appellate Prosecutor, as Special Assistant State's Attorney, and as such full faith and credit are due to all his official acts." In addition to the file-stamped date, the upper portion bears a handwritten date of August 13, 1999. The bottom portion of the document recites the oath of office taken by Allan F. Lolie, Jr., and bears his signature. The bottom portion of the document was signed by a notary on August 12, 1999, one day before the top portion of the document was signed by the State's Attorney.

After all the pretrial matters were resolved, a seven-day jury trial ensued. The trial took place on April 3, 4, 5, 6, 7, 10, and 11, 2000. Lolie represented the State throughout the trial. A review of the transcripts from those dates shows that Lolie was almost wholly responsible for the prosecution of the defendant. Mr. Parkinson was introduced to jurors as a part of the prosecution team, but his participation in the seven-day trial was minimal. Parkinson participated in *voir dire*, argued a minor evidentiary ruling regarding recorded conversations between the defendant and a witness, examined one witness (Dr. Travis Hindman, a pathologist who had performed the autopsy on the victim), and participated in the jury-instruction conference.

At the trial, the State presented evidence that the defendant and his wife conspired to kill the victim after the defendant had learned of his wife's infidelities. The defendant, on the other hand, testified that

he did not plan to kill the victim but "freaked out" after he saw his wife performing oral sex on the victim and that he struggled with the victim for approximately 15 minutes until the victim stopped moving. The defendant admitted that during 90% of the fight, he was on top of the victim while the victim was facedown on the ground.

Dr. Hindman testified that the autopsy did not reveal a conclusive cause of death. He found a laceration on the left side of the victim's forehead but no evidence of a skull fracture or injury to the brain. He opined that the victim died by "a combination of suffocation, that's covering the nose and mouth[,] and compression asphyxia from compression to the chest."

At the jury-instruction conference, the defendant tendered an instruction for involuntary manslaughter. The trial court refused the instruction on the basis that the duration of the altercation between the defendant and the victim indicated that the defendant's actions were not reckless. The trial court instructed the jury on the lesser offense of second-degree murder.

During deliberations, the jury sent the following note to the trial court: "If we vote not guilty of first[-]degree murder[,] do we then confer on second[-]degree murder[,] or do we have to find guilty of first[-]degree murder before conferring on second degree?" The defendant urged the trial court to respond "No." The trial court responded by bringing the jury back to the courtroom and rereading the elements instructions for first- and second-degree murder. The jury later returned guilty verdicts for second-degree murder and concealment of a homicidal death.

On May 15, 2000, the trial court conducted a sentencing hearing. A presentence investigation report noted the defendant's three prior traffic convictions and a 1995 conviction for the production of cannabis plants. As factors in mitigation, the trial court found that the defendant did not have a substantial history of prior criminal conduct and that his conduct had been induced by someone other than himself. As a factor in aggravation, the trial court noted that it was necessary to deter others from committing similar crimes. The trial court sentenced the defendant to consecutive prison terms of 15 years on the second-degree-murder conviction and 5 years on the concealment-of-a-homicidal-death conviction. The defendant now appeals.

## II. ANALYSIS

### A. Authority to Prosecute

The defendant asserts that the appellate prosecutor lacked the authority to prosecute this case, making the trial a nullity and the resulting conviction void. The State responds that Allan Lolie was ap-

pointed as a special assistant State's Attorney in this case and thereby obtained the authority to prosecute the case. In the alternative, the State contends that even if Lolie lacked authority to prosecute the case, the defendant's convictions are not rendered void by Lolie's appointment. The State asserts that, at worst, the convictions are voidable and that because the defendant failed to object to Lolie's participation in the trial and cannot show that he suffered any prejudice from Lolie's participation, the convictions should be affirmed. We agree with the State.

■ It has long been accepted that the circuit court has the discretion to permit a privately employed attorney to assist the State's Attorney in the prosecution of a criminal case, so long as the State's Attorney assumes the management of the case and there is no injustice to the defendant. *Hayner v. People*, 213 Ill. 142, 147-48, 72 N.E. 792, 794 (1904); *People v. Blevins*, 251 Ill. 381, 389, 96 N.E. 214, 217-18 (1911). While a trial court is vested with the discretion to permit private counsel to assist a State's Attorney, a trial court must specifically appoint such an attorney. Section 3—9008 of the Counties Code provides as follows:

> "Appointment of attorney to perform duties. Whenever the State's [A]ttorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding, and the attorney so appointed shall have the same power and authority in relation to such cause or proceeding as the State's [A]ttorney would have had if present and attending to the same ***." 55 ILCS 5/3—9008 (West 1998).

■ In the instant case, nothing in the record indicates that the State's Attorney was sick, absent, or unable to attend or had a conflict of interest that prevented him or a duly authorized assistant from prosecuting the case. The record shows that Lolie actually assumed the management of the case, not merely assisted in the prosecution. The record indicates that Shelby County Assistant State's Attorney Friedel filed the information and was the initial attorney of record in the case; however, as early as August 12, 1999, Allan Lolie took over the prosecution of the defendant. Lolie's name appears as the attorney of record on all transcripts after October 29, 1999. The trial transcripts show that Lolie displaced the State's Attorney and was responsible for the prosecution of the defendant. From a review of the record in the instant case, the only conclusion that can be drawn is that Allan Lolie usurped the duties of the county State's Attorney. But see *People v.*

*Moretti*, 415 Ill. 398, 403-04, 114 N.E.2d 337, 339-40 (1953) (where the assistant appellate prosecutor assigned to the case was essentially a special assistant acting under the authority and supervision of the State's Attorney).

No order was issued by the trial court appointing Lolie as a special assistant in this case. Instead, there is only a document signed by the State's Attorney of Shelby County appointing Allan F. Lolie, Jr., of the appellate prosecutor's office as a special assistant State's Attorney and an oath of office taken by Lolie and notarized one day prior to his "appointment." The order signed by the State's Attorney of Shelby County does not refer to either a case file number or the name of the case to which Lolie was allegedly appointed to act as a special assistant. This type of appointment cannot be condoned. State's Attorneys are clearly not meant to have such unbridled authority in the appointment of special prosecutors. The appointment of a special prosecutor is limited to a specific case, and the order appointing such an attorney must be a part of the record.

Moreover, State's Attorneys cannot simply create assistant positions as they see fit. Section 4—2003 of the Counties Code provides as follows:

> "[W]here assistant State's Attorneys are required in any county, the number of such assistants shall be determined by the county board, and the salaries of such assistants shall be fixed by the State's Attorney subject to budgetary limitations established by the county board and paid out of the county treasury ***." 55 ILCS 5/4—2003 (West 2002).

The provisions in place for the appointment of assistants were not followed here.

Section 4.01 of the State's Attorneys Appellate Prosecutor's Act (Act) (725 ILCS 210/4.01 (West 2002)) provides the scope of authority for those instances in which attorneys employed by the appellate prosecutor's office may represent the People of the State of Illinois. That statute provides as follows:

> "§ 4.01. The Office and all attorneys employed thereby may represent the People of the State of Illinois on appeal in all cases which emanate from a county containing less than 3,000,000 inhabitants, when requested to do so and at the direction of the State's Attorney[ ] otherwise responsible for prosecuting the appeal, and may, with the advice and consent of the State's Attorney[,] prepare, file[,] and argue such appellate briefs in the Illinois Appellate Court ***. The Office may also assist County State's Attorneys in the discharge of their duties under the Illinois Controlled Substances Act [(720 ILCS 570/100 *et seq.* (West 2002))], the Cannabis Control Act [(720 ILCS 550/1 *et seq.* (West 2002))], the Drug

Asset Forfeiture Procedure Act [(725 ILCS 150/1 *et seq.* (West 2002))], the Narcotics Profit Forfeiture Act [(725 ILCS 175/1 *et seq.* (West 2002))], and the Illinois Public Labor Relations Act [(5 ILCS 315/1 *et seq.* (West 2002))], including negotiations conducted on behalf of a county or pursuant to an intergovernmental agreement[,] as well as in the trial and appeal of said cases and of tax objections, and the counties which use services relating to labor relations shall reimburse the Office on pro-rated shares as determined by the board based upon the population and number of labor relations cases of the participating counties." 725 ILCS 210/4.01 (West 2002).

Section 4.01 of the Act does not specifically include a murder prosecution as an instance in which an employee of the appellate prosecutor's office may assist a county State's Attorney in the discharge of his or her duties.

A recent case, *People v. Ward*, 326 Ill. App. 3d 897, 762 N.E.2d 685 (2002), addressed a situation similar to the one presented here. In *Ward*, Charles Zalar of the appellate prosecutor's office appeared on behalf of the State and introduced himself as a special assistant State's Attorney for the county. The defendant objected to Zalar prosecuting the case, on the basis that the Act at that time (725 ILCS 210/1 *et seq.* (West 1998)) did not authorize an employee of the State's Attorneys Appellate Prosecutor's office to prosecute the defendant under the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 1998)), the statute under which the defendant had been charged. *Ward*, 326 Ill. App. 3d at 901, 762 N.E.2d at 688-89. The trial court denied the defendant's objection, and the case proceeded to a trial. The defendant was found guilty and sentenced to probation. One of the issues on appeal was whether the special assistant State's Attorney was authorized to prosecute the case. In *Ward*, we relied on the rule of statutory interpretation *expressio unius est exclusio alterius*, which means that the enumeration of certain matters in a statute implies the exclusion of all others, to determine that the appellate prosecutor was not permitted to prosecute a violation of the Cannabis Control Act. *Ward*, 326 Ill. App. 3d at 902, 762 N.E.2d at 689. Our holding in *Ward* establishes that under the statutory scheme then in place, the appointment of an attorney from the State's Attorneys Appellate Prosecutor's office to prosecute the instant murder case was not allowed.

*Ward*, however, is distinguishable from the instant case because in *Ward* the defense objected to Zalar's appointment. The *Ward* court specifically stated:

"Charles Zalar of the State's Attorneys Appellate Prosecutor's of-

fice appeared on behalf of the State and introduced himself as a special assistant State's Attorney for Hamilton County. Defendant objected to Mr. Zalar prosecuting the case, on the basis that the State's Attorneys Appellate Prosecutor's Act [citation] did not authorize the State's Attorneys Appellate Prosecutor to prosecute the instant case. The trial court denied defendant's objection, and Mr. Zalar remained as the prosecutor." *Ward*, 326 Ill. App. 3d at 900, 762 N.E.2d at 688.

Because the defendant in *Ward* had specifically challenged the legitimacy of the prosecutor, the trial court erred in allowing an agency attorney to prosecute the case. In the instant case, the defendant did not object to Lolie's appointment.

While the instant case is distinguishable from *Ward*, it is factually similar to *People v. Woodall*, 333 Ill. App. 3d 1146, 777 N.E.2d 1014 (2002). *Woodall* also originated in Shelby County, when the State's Attorney unilaterally created assistant State's Attorneys by commissioning attorneys employed by the appellate prosecutor's office, including Allan Lolie, to assist in a murder prosecution. In *Woodall*, we concluded that the State's Attorney did not have any authority to commission the three attorneys and that there was no legitimate basis for them to prosecute the defendant. *Woodall*, 333 Ill. App. 3d at 1155, 777 N.E.2d at 1021. Notwithstanding the prosecutors' lack of legitimacy, we concluded that the convictions were not void but were merely voidable, and given that the attorneys were licensed to practice law and the defendant had failed to challenge their authority either before the trial or during the trial, we refused to overturn the defendant's convictions. The *Woodall* court specifically addressed *Ward* and stated in pertinent part as follows:

"*Ward* should not be read as the source of a novel jurisdictional rule that would void all convictions procured by licensed attorneys who, for whatever reason, mistakenly believe that they are authorized to act on the State's behalf and who are permitted to do so by those being prosecuted. Any defect in an attorney's appointment process or in his or her authority to represent the State's interests on a given matter is not fatal to the circuit court's power to render a judgment. The right to be prosecuted by someone with proper prosecutorial authority is a personal privilege that may be waived if not timely asserted in the circuit court." *Woodall*, 333 Ill. App. 3d at 1159, 777 N.E.2d at 1024-25.

Relying on *Woodall*, we find that the defendant is not entitled to have his convictions overturned due to his prosecutor's defective commission to prosecute.

Here, the defendant's indictment was properly procured by Steve Friedel, a Shelby County assistant State's Attorney, who also

conducted five pretrial hearings on behalf of the State. The defendant's convictions were obtained by Allan Lolie, a licensed attorney. The defendant does not argue and the record does not indicate that he was harmed by Lolie's prosecution. At no time in the proceedings did the defendant object to the trial court's recognition of Lolie as a prosecutor. The defendant, therefore, waived his right to challenge Lolie's defective commission to prosecute.

## B. Jury Instructions

The defendant contends that he was entitled to have the jury instructed on involuntary manslaughter and that the trial court erred in refusing to do so. The defendant insists that the evidence indicated that he did not go to Eagle Creek State Park intending to kill or harm the victim but only that he acted with reckless disregard that his acts would cause death. In support of his argument, the defendant points out that (1) he did not have a weapon on him when he confronted the victim, (2) he responded spontaneously after observing his wife performing oral sex upon the victim, and (3) the probable cause of the victim's death—suffocation and asphyxia—was consistent with his testimony that he wrestled the victim to the ground and held him facedown. The State replies that the trial court correctly decided that an involuntary manslaughter instruction was unwarranted because the evidence adduced at the trial did not support the defendant's contention that the victim's death was the result of a reckless act. We agree with the State.

■ When there is evidence in the record that would reduce the crime from murder to manslaughter, an instruction defining the lesser crime should be given. *People v. Ward*, 101 Ill. 2d 443, 451, 463 N.E.2d 696, 699 (1984). This is true even in cases where the evidence is very slight. *People v. Stevenson*, 196 Ill. App. 3d 225, 230, 553 N.E.2d 441, 445 (1990). Nevertheless, an involuntary manslaughter instruction should not be given where the evidence clearly shows that the homicide was murder. *People v. Simpson*, 74 Ill. 2d 497, 501, 384 N.E.2d 373, 374 (1978).

Here, the jury was instructed on murder, which requires a mental state that is different than the one required for involuntary manslaughter. Murder requires that a defendant have the intent to kill or cause great bodily harm or the knowledge that his or her actions create a strong probability of this result. On the other hand, a person commits manslaughter by committing an act causing the death of an individual through reckless or inadvertent conduct. *People v. Martinez*, 242 Ill. App. 3d 915, 927, 611 N.E.2d 1027, 1034-35 (1992). The trial court reasoned that the duration of the event causing the victim's

death was sufficiently long that it negated the defendant's contention of recklessness.

In *People v. Presley*, 230 Ill. App. 3d 77, 595 N.E.2d 606 (1992), the defendant was convicted of three counts of first-degree murder after admitting to having been involved in a 15- to 20-minute vicious beating of the victim, who died as a result of the beating. The defendant argued that the evidence supported an instruction on involuntary manslaughter because he testified that he had not intended to kill the victim and there had been no showing that he had struck the fatal blow to the victim. *Presley*, 230 Ill. App. 3d at 86, 595 N.E.2d at 612. In that case, the trial court found that the severity of the beating negated any suggestion of recklessness. *Presley*, 230 Ill. App. 3d at 87, 595 N.E.2d at 613. While the facts in the instant case do not indicate a beating as savage as the one in *Presley*, we nevertheless agree with the trial court that the defendant's admission that he sat on top of the victim for 15 to 20 minutes indicates that the defendant's actions went beyond reckless or inadvertent conduct.

■ The defendant admitted that he threw the victim to the ground and hit him numerous times. The defendant admitted that he got on top of the victim, who was facedown on the ground during 90% of the altercation. The defendant further admitted hitting the victim in the head with a rock. The defendant then passed the rock to his wife and stayed on top of the victim while she hit the victim with the rock. The defendant admitted that he sat on top of the victim for at least 15 minutes before the victim quit struggling. At that point, the defendant checked the victim's pulse but failed to detect one. The record indicates that the defendant knew that his actions created a strong probability that the victim would die. Under these circumstances, we concur with the trial court that the evidence presented at the trial did not justify instructing the jury on involuntary manslaughter.

### C. Response to Jury Question

The defendant next contends that he was denied a fair trial due to the trial court's response to a question by the jury during deliberations. The question asked by the jury concerned the effect of finding the defendant guilty or not guilty of first-degree murder. The note stated, "If we vote not guilty of first[-]degree murder[,] do we then confer on second[-]degree murder[,] or do we have to find guilty of first[-]degree murder before conferring on second degree?" The defendant argues that the trial court's refusal to answer this question with a simple "No" constitutes error. The defendant asserts that the jury question required a negative response because the jury had already voted not guilty on first-degree murder; however, the record fails to support the defendant's assertion.

■ A trial court may exercise its discretion and properly decline to answer a jury's inquiries when the instructions are readily understandable and sufficiently explain the relevant law, when further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or when the giving of an answer would cause the court to express an opinion that would likely direct a verdict one way or another. *People v. Reid*, 136 Ill. 2d 27, 39, 554 N.E.2d 174, 179-80 (1990). Under the circumstances presented here, we cannot say that the trial court's actions were improper.

■ There is no way to know whether the jury had already voted and found the defendant not guilty of first-degree murder. The defendant is merely speculating that this is what occurred. Moreover, as the State points out, the note sent by the jury was a compound question and not meant for a simple yes-or-no answer. The jury instructions were standard pattern instructions, were understandable, and adequately stated the law. Once the trial court reread the instructions, the jury did not repeat the question or indicate any further confusion. Therefore, we believe that the trial court properly exercised its discretion by referring the jury to the original instructions. See *People v. Cooper*, 283 Ill. App. 3d 86, 94-95, 669 N.E.2d 637, 643 (1996); *People v. Almendarez*, 266 Ill. App. 3d 639, 647-48, 639 N.E.2d 619, 626 (1994).

### D. Consecutive Sentences

The defendant asserts that the trial court erroneously believed that it was required to impose consecutive sentences under section 5—8—4 of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—4 (West Supp. 1999)). During sentencing, the trial court explained its decision to impose consecutive terms:

> "I believe from my reading here that it is not the statute itself that would indicate that a consecutive sentence is necessary but rather 730 ILCS 5/5—8—4. Counsel has indicated that in his opinion for the defendant now, that [*sic*] he believes these are not in the same single course of conduct[,] [n]o substantial change in the nature of the criminal objective. The court believes that either [*sic*] under (a) or (b) based on the fact situation here, that it is a mandatory sentence."

The trial court then sentenced the defendant to consecutive prison terms of 15 years for second-degree murder and 5 years for concealment of a homicidal death.

■ Section 5—8—4 of the Code provides in pertinent part:

> "(a) When multiple sentences of imprisonment are imposed on a defendant at the same time, *** the sentences shall run concur-

rently or consecutively as determined by the court. \*\*\* *The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless*:

(i) *one of the offenses for which defendant was convicted was first[-]degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury,* \*\*\*

\* \* \*

in which event the court shall enter sentences to run consecutively. \*\*\*

(b) The court shall not impose a consecutive sentence except as provided in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record; *except that no such finding or opinion is required when multiple sentences of imprisonment are imposed on a defendant for offenses that were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, and one of the offenses for which the defendant was convicted was first[-]degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury \*\*\*, in which event the Court shall enter sentences to run consecutively.*" (Emphasis added.) 730 ILCS 5/5—8—4(a)(i), (b) (West Supp. 1999).

While the defendant is cognizant of the fact that he was convicted of a Class 1 felony and that he inflicted severe bodily harm, he argues that the crimes were not committed during a single course of conduct. However, under the above-quoted language of section 5—8—4 of the Code, when a defendant is convicted of multiple offenses and any of those offenses is a Class 1 felony in which severe bodily injury was inflicted, the trial court is required to sentence the defendant to consecutive sentences.

In *People v. Murphy*, 322 Ill. App. 3d 271, 752 N.E.2d 19 (2001), the defendant, who was convicted of multiple offenses, including predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 1998)), challenged the constitutionality of the trial court's imposition of consecutive sentences pursuant to section 5—8—4 of the Code. A panel of this court determined that when a defendant is convicted of multiple offenses and any of those offenses is one of the offenses listed, the trial court is required to sentence the defendant to consecutive terms. The *Murphy* court specifically stated:

"Subsection (a) applies where the crimes 'were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective.' 730 ILCS 5/5—8—4(a) (West 1998). Subsection (b) applies where the crimes 'were *not* committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective.' (Emphasis added.) 730 ILCS 5/5—8—4(b) (West 1998). Contrary to defendant's argument, the trial court was not required to find that defendant committed his crimes during a single course of conduct, because the legislature has eliminated that determination when the defendant is convicted of multiple offenses and one of those offenses is one of the listed *** offenses. Under these circumstances, the sentencing is required to be consecutive without any further factual consideration." *Murphy*, 322 Ill. App. 3d at 282, 752 N.E.2d at 28.

■ Here, the underlying conviction for second-degree murder is a Class 1 felony and serious bodily injury was inflicted; therefore, it was mandatory that the defendant's sentence for concealment of a homicidal death run consecutively to the sentence imposed for second-degree murder. The trial court was not required to make a factual finding under subsection (a) or (b) as to whether the conduct had been committed during a single course of conduct or not. The sentencing is required to be consecutive, and no further factual considerations need be made. *Murphy*, 322 Ill. App. 3d at 282, 752 N.E.2d at 28. Therefore, we find that the trial court did not err in sentencing the defendant to consecutive terms.

### E. Excessive Sentences

The defendant also contends that the sentences imposed by the trial court were excessive in light of his relatively young age, impressive work history, strong family ties, and potential for rehabilitation.

■ As long as a sentence is within the statutory limits, the trial court's determination of the appropriate sentence is a matter within its sound discretion, and the sentence imposed will not be overturned absent an abuse of that discretion. *People v. Holmes*, 254 Ill. App. 3d 271, 282, 627 N.E.2d 98, 106 (1993). A trial judge is in a better position than a reviewing court to impose a proper sentence, because the trial judge can make a reasoned decision based upon firsthand consideration of such factors as the defendant's credibility, demeanor, moral character, social environment, and habits, whereas the reviewing court has to rely entirely on the record before it. *People v. Streit*, 142 Ill. 2d 13, 19, 566 N.E.2d 1351, 1353 (1991). In sentencing a defendant, the trial court is to consider the seriousness of the offense, along with the objective of restoring the defendant to useful citizen-

ship; however, the trial court need not give more weight to the possibility of rehabilitation than to the seriousness of the crime. *People v. Votava*, 223 Ill. App. 3d 58, 80, 584 N.E.2d 980, 995 (1991).

▮ Prior to sentencing the defendant, the trial judge specifically stated, "[I have] considered the evidence offered today and the information offered by the parties in aggravation and mitigation." The record before us indicates that the sentences imposed were the product of thoughtful consideration and a proper balancing of all the mitigating and aggravating factors. The trial court set out in great detail its reasons for imposing prison time, including the fact that the evidence showed the defendant went to Eagle Creek State Park with the purpose of confronting the victim, the matter-of-fact way the defendant talked about suffocating the victim, and the fact that the defendant ignored the victim's pleas for mercy. Overall, the trial court found that the defendant lacked remorse and compassion.

Our review of the record shows that the victim's murder and the subsequent manner in which the defendant tried to conceal the victim's murder are appalling. The pictures of the victim's body after it was removed from the lake are shocking. The defendant's recorded remarks to Mr. Riley about the crimes are highly offensive and indicate a lack of remorse. Under these circumstances, we cannot say that the trial court's imposition of sentences of 15 years' imprisonment for second-degree murder and 5 years' imprisonment for concealment of a homicidal death was an abuse of discretion. We find that the trial court's sentences reflect the seriousness of the defendant's crimes, and we affirm the sentences imposed.

## III. CONCLUSION

We find no error warranting the reversal of the defendant's convictions or sentences. For the foregoing reasons, we affirm the judgment of the circuit court of Shelby County.

Affirmed.

HOPKINS, P.J., and CHAPMAN, J., concur.