Charles R. Aiken, Appellant, v. County of Will et al., Appellees.

Gen. No. 9,915.

October term, 1943.  Heard in this court at the
Opinion filed December 28, 1943.
Rehearing denied February 1, 1944.

AIKEN, McCURRY, BENNETT & CLARY, of Chicago, and KRUSEMARK & KRUSEMARK, of Joliet, for appellant; CHARLES R. AIKEN, of Chicago, of counsel.

JAMES E. BURKE, State's Attorney, for appellees; EDWARD R. NADELHOFFER, of Joliet, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

On May 27, 1942, appellant filed a petition in the circuit court of Will county against appellees for a writ of mandamus to compel the issuance of a warrant to him for $3,266 and the payment thereof out of the county treasury, on account of his claim for salary as a special State's Attorney from February 20, 1939 to July 10, 1939, under section 6 of the statute relating to the Attorney General and State's Attorneys (Ill. Rev. Stat. 1943, ch. 14, par. 6 [Jones Ill. Stats. Ann. 126.054]). On motion of appellees, the trial court entered a judgment dismissing the petition as insufficient in law, and awarding appellees their costs. The cause is here by appeal from the judgment.

The pertinent portions of the section of the statute above mentioned read as follows:

"Whenever the . . . state's attorney is . . . interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding, and the attorney so appointed shall have the same power and authority in relation to such cause or proceeding as the . . . state's attorney would have had if present and attending to the same," and, after providing for the appointment by the county board of some competent attorney to fill any vacancy in that office of more than one year, by death, resignation, or otherwise, further provides: "Such attorney so appointed shall possess all the powers and discharge all the duties of a regularly elected state's attorney under the laws of the State, and shall be paid by the county he serves the same compensation as provided by law for the state's attorney of the county, apportioned as to the time of service."

The petition for the writ, after allegations as to the respective official positions of the respondents, and that the petitioner is a competent attorney, alleges the impanelling of a special grand jury to investigate charges of criminal activity in connection with negotiations to settle, for $125,000, a pending suit by the county against Herbert R. Jones, a former county treasurer, and his bondsmen, to recover a shortage of more than $600,000; the entry of an order by the court, on February 20, 1939, finding that the State's Attorney was interested in the subject matter of the investigation (as a prospective witness), and appointing the petitioner as special State's Attorney to conduct the investigation, and to prosecute any presentments returned by the special grand jury.

The petition then alleges that immediately afterward, on February 20, 1939, the petitioner accepted the

appointment, took the oath of office, "and commenced upon his duties as such special State's Attorney; . . . That thereafter the special grand jury and the Special State's Attorney, petitioner, commenced upon an exhaustive investigation into the criminal charges arising out of the County's suit against Herbert R. Jones and his sureties, commonly called the 'Jones case,' during the course of which inquiry a large number of witnesses, documents, and books and records were examined and studied"; that the special grand jury made a report to the court on March 16, 1939, and at the same time returned true bills against the former county treasurer and his uncle, Ben D. Jones, charging them with the crimes of forgery and perjury, and that thereupon the special grand jury was ordered to stand adjourned, subject to being reconvened; "that subsequent to the adjournment of the special grand jury, and until July 10, 1931," the petitioner devoted his entire time and attention to a further investigation of the "Jones case" and its many ramifications, and to the preparation for trial of the pending indictments against Herbert R. Jones and Ben D. Jones; that on June 26, 1939, the petitioner presented a petition to the court requesting instructions as to whether he should continue in the performance of his duties as special State's Attorney; that he renewed his request on July 10, 1939, but the regularly elected State's Attorney refused to recommend either that the petitioner be discharged from further service or that he be directed to continue therein, and that thereupon the court accepted the petitioner's resignation.

It is then alleged that the compensation provided by law for the regularly elected State's Attorney of Will county is $8,400 per annum; that the petitioner served as such special State's Attorney for four and two-thirds months, from February 20, 1939 to July 10, 1939, and that the salary earned by the petitioner during the term of his appointment, as fixed by the statute, amounted to $3,266; that such amount was due on the

termination of his appointment, and that thereupon it became the duty of the respondents, under the law, to issue a warrant therefor and to make payment thereof out of the county treasury. It is further alleged that the petitioner presented a verified demand for that amount to the board of supervisors on July 25, 1939, and that up to the time of the filing of the petition herein the board had refused to act upon it, although repeatedly called upon to do so.

The prayer of the petition is for a writ commanding the respondents, and each of them, to do every act and thing devolved upon them by law to effect payment of petitioner's claim, detailing the usual steps, and praying that if there are not sufficient funds available in the hands of the country treasurer, that a warrant be issued and paid when funds are available, and that the board of supervisors take the statutory steps to make funds available, including the making of an appropriation and the levy and assessment of a tax, and for such other and further or different relief as the nature and exigencies of the case may require and as to the court shall seem meet. The petition was verified and several exhibits were attached.

Among the grounds of the motion to strike were allegations that the alleged services were rendered before a nonexistent and nonlegal special grand jury, as judicially determined by subsequent court proceedings, and were not rendered by a competent attorney, for the reason that all the indictments prepared by the petitioner were subsequently held by the court to be null and void. The motion to strike was not verified, and under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1943, ch. 110, par. 172 [Jones Ill. Stats. Ann. 104.048]), the trial court correctly declined to consider the allegations in the motion of facts not appearing upon the face of the petition. (*Holderman v. Moore State Bank,* 383 Ill. 534, 548.)

The theory of appellant, and the allegations of the petition, are to the effect that by the terms of the statute, he is entitled to be paid, as a public officer, the same salary as the regularly elected State's Attorney for the full time between his appointment and his resignation. Appellees contend that the words "apportioned as to the time of service" mean the time which such an appointee as appellant actually spends in such service, and that therefore the petition shows that appellant's claim is an unliquidated demand, and that mandamus does not lie to enforce such a demand without a prior judgment.

A public office can exist only through its creation by the constitution or by some statutory enactment. (*Ramsay v. VanMeter*, 300 Ill. 193, 201.) There is no such provision creating the office of "special State's Attorney." A public office can exist only by force of law and it would be a misapprehension to call one an officer who holds no office. The fact that appellant took the oath of office does not mean that he thereby became an officer, when no office was actually in existence. (*Krawiec v. Industrial Commission*, 372 Ill. 560, 564; *Johnson v. Industrial Commission*, 326 Ill. 553, 555.) Appellant was not a State's Attorney, because the statute provides for only one State's Attorney in a county, and there was an incumbent of that office. While the words "special State's Attorney" have been used by the courts in several cases, the obviously correct term would be "special attorney for the State," or "special attorney for the people of the State." Therefore appellant's claim that the legal right to an office carries with it the right to the salary, and that the salary follows the legal title, has no application here.

In *Lavin v. Board of Commissioners of Cook County*, 245 Ill. 496, relied upon by appellant, upon the petition of the State's Attorney, the trial court appointed a

special State's Attorney to investigate and prosecute alleged frauds in a primary election, at which the State's Attorney was a candidate for the nomination to succeed himself, and wherein a contest filed by him against his rival candidate, who had been declared nominated, was pending. Lavin, a taxpayer, filed a suit to enjoin the county officials from paying any sums to the appointee or his assistants, on the ground that the State's Attorney was not an interested party to the prosecution of the frauds, or disqualified for any of the other reasons mentioned in section 6, and that therefore the appointment was void. The Supreme Court held that the appointing court had jurisdiction by the petition, which alleged the petitioner's interest; that the order was not void because of a mere error of the court in exercising its discretion; that the appointee was at least a *de facto* special State's Attorney; and that a court of equity will not take jurisdiction of a bill of a taxpayer to contest the title to office of a *de facto* incumbent, or to enjoin him from performing his duties or receiving the fees, salary or emoluments pertaining thereto, the remedy, if any, being at law, by quo warranto. No question was involved as to whether such an appointee was in fact an officer, or whether he should be paid only for his actual services. That case is not persuasive of the correctness of appellant's contentions in this case.

A special State's Attorney authorized to be appointed under section 6 does not have all the powers of a State's Attorney. His powers are limited to causes or proceedings in which the State's Attorney is disqualified. As to all other matters the State's Attorney continues to exercise all of the duties and enjoys all of the emoluments of his office. Section 6 does not authorize the appointment of State's Attorneys such as are required to be elected by the constitution or of any officer having all the powers and duties of such

State's Attorneys. (*Tearney v. Harding*, 335 Ill. 123, 125.) It does not purport to create any office, or provide that such an appointee as appellant shall become State's Attorney, even for the time being, or mention a "special State's Attorney," but merely provides that under the circumstances mentioned therein, the court "may appoint some competent attorney to prosecute or defend such cause or proceeding," and limits his power and authority to the particular cause or proceeding. The later language of the same section that "Such attorney so appointed shall possess all the powers and discharge all the duties of a regularly elected State's Attorney under the laws of the State," manifestly applies to the immediately antecedent provisions for the filling of a vacancy by the county board in the office of State's Attorney, by which the appointee becomes State's Attorney, and as such, an officer. We think it is clear that the words "apportioned as to the time of service," mean, as to a State's Attorney appointed to fill a vacancy in that office, the time of his service as such officer, and, that as to an appointee such as appellant, they mean the time of actual service. This is demonstrated by the special and limited character of the service to be performed by an appointee such as appellant, while an appointee to fill a vacancy in the office of State's Attorney, becomes the State's Attorney.

If appellant's contentions are correct, then, if such an appointment should be made by the court, after the regular grand jury adjourns, and no steps are taken in the matter to be investigated until another regular grand jury takes it up at some subsequent term, the appointee would be entitled to the same compensation during the whole period, as the regularly elected State's Attorney, regardless of how much time elapsed between his appointment and the time when the charges are considered by the subsequent grand jury,

whether or not the appointee rendered any service during that time. We do not think the legislature had any intention to impose upon the taxpayers of a county, a tax burden of double the amount of the compensation of the State's Attorney, merely for the benefit of such an appointee, nor except for actual service rendered in a cause wherein the State's Attorney is disqualified.

Appellant argues that the petition shows that he devoted his entire time and attention to the matters delegated to him during the whole period between his appointment and his resignation, and that therefore he is entitled to the same compensation for that period as the regularly elected State's Attorney. The answer to this claim is, that for the period between his appointment and the adjournment of the special grand jury, the only allegation as to his service is that he "commenced" upon his duties, and "commenced" upon an exhaustive investigation, during which a large number of witnesses, etc., were examined and studied. It is nowhere alleged that during that period appellant was engaged continuously or for any considerable length of time in such activities. The only allegation as to continuous service is that "subsequent" to the adjournment of the special grand jury, he devoted his entire time and attention to such service until July 10, 1939, without alleging how long "subsequent" to such adjournment this latter alleged service began. So far as the petition discloses, it may have begun on July 9, 1939, the day before he resigned. The fact that his prior petition to the court for instructions, a copy of which is attached to the petition for the writ, as an exhibit, alleged continuous service since his appointment, does not supply the deficiency in the petition for the writ. The only allegation in the latter is that such a petition for instructions was filed, without affirming the truth of its allegations.

Mandamus does not lie for the collection of a debt, but is proper to enforce payment of a claim ascertained to be due. This ascertainment is usually by a judgment. Mandamus is not proper where the right of the petitioner must first be established or the duty of the officers sought to be coerced must first be determined. (*Bengson v. City of Kewanee*, 380 Ill. 244, 250; *People v. County of LaSalle*, 378 Ill. 578, 580.) Under the applicable statute, appellant's right to remuneration, if any, depends, not only upon his appointment, but upon whether he rendered any service thereunder, and the time spent in such service. Appellee's brief indicates that these matters are in dispute. Appellees not only had the right, but it was their duty, to require a legal determination of those questions, and until that is done by reducing the claim to a judgment, there is no basis for a writ of mandamus. (*Bengson v. City of Kewanee, supra; People v. County of LaSalle, supra.*)

The allegations that petitioner served as such special State's Attorney for four and two-thirds months, and that the "salary" earned by him amounted to $3,266 for that period, and that upon his resignation it became the duty of the respondents to issue a warrant therefor and make payment thereof out of the county treasury are mere legal conclusions of the pleader, based upon an erroneous hypothesis, and are not admitted to be true by the motion to strike.

Furthermore, the petition is silent as to whether the county has money available to pay such a warrant, and as to whether any appropriation was made therefor. If there be no funds with which to pay a warrant, or no appropriation covering such an expense, issuance of the warrant will not be commanded by the writ of mandamus. It is incumbent upon the petitioner to show a clear right to have it issued. (*DeWolf v.*

*Bowley,* 355 Ill. 530, 538; *People v. Brown,* 281 Ill. 390; *Bengson v. City of Kewanee, supra.*)

Appellant's claim that under that part of the prayer for such other, further or different relief, he is entitled to a writ to compel the county board to take action upon his claim, is answered by the fact that the board's refusal to act after repeated demands upon it to do so, amounts to a rejection of the claim (*Loewenthal v. People ex rel. Raymond,* 192 Ill. 222; *Board of Supervisors v. Commissioners of Highways,* 66 Ill. App. 50), obviating any reason or basis for such a writ.

It has long been the settled rule in this State that a relator in mandamus must show a clear and undoubted right to the relief prayed, and a corresponding duty on the part of the respondent to do the act sought to be compelled. (*People v. Whealan,* 356 Ill. 328, 334.) It is incumbent upon the person seeking the extraordinary aid of a mandamus to set forth in his petition all the facts specifically, which, if true, would be necessary to entitle him to the relief sought and he must show a clear prima facie case to warrant the writ. (High's Extraordinary Legal Remedies, 3d ed., sec. 450.) The question is not how long appellant was such appointee, but it is how much time he spent in connection with the particular matter for which, and no other, he was employed.

Because of the above mentioned insufficiencies in the petition for the writ, it is unnecessary to discuss other matters urged by appellees. The trial court correctly struck the petition and dismissed the suit, and the judgment is affirmed.

*Judgment affirmed.*