(text box: 1) NO. 5-00-0478

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Shelby County.

)

)  No. 99-CF-68

)

ROBERT WOODALL, )  Honorable

)  Patrick J. Hitpas,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

We are presented a case where three lawyers who work for the State's Attorneys Appellate Prosecutor's office teamed up to successfully prosecute and convict Robert Woodall of multiple crimes, including the execution-style murder of a young woman named Heather Lynch.  Either the trio conducted an error-free prosecution or the defendant has simply bypassed other potential issues, confident in his challenge of their power to do what they did.  

The defendant raises but one question for our review.  It rests upon the contention that the people who prosecuted him were all illegitimate interlopers, masquerading as representatives of the State.  We are asked to decide whether the defendant's multiple convictions stand for naught, rendered null and void by virtue of a prosecution championed by attorneys who lacked the legal authority to act on the State's behalf.  

The defendant's argument is based upon a recently amended statutory provision that creates the State's Attorneys Appellate Prosecutor's office.  Pub. Act 92-683, eff. July 16, 2002 (amending 725 ILCS 210/4.01 (West 2000)).  The earlier version of the statute, and the powers that it conveyed at the time of the defendant's trial, fuels the argument.  It is essentially as follows.  Attorneys employed by the State's Attorneys Appellate Prosecutor's office (the Agency) are prohibited by statute from participation in criminal trials other than those expressly authorized by the Agency's enabling legislation.  That legislation does not permit the Agency employees to assist local prosecutors in the trial of cases involving the type of charge leveled here.  Therefore, the Agency employees lacked the legal authority to conduct a trial on the State's behalf.  It follows that the trial itself was structurally flawed from the beginning.  Everything that happened, including the jury's decision, is a virtual nullity, voided by the absence of a valid commission to prosecute.

The facts pertinent to this argument are undisputed.  The State's Attorney for Shelby County, through an assistant State's Attorney, filed a nine-count information on July 2, 1999, charging the defendant with five different theories of murder in the death of Heather Lynch.  Heather died from a close-range gunshot wound to the head, inflicted on May 4, 1999.  The information also charged the defendant with home invasion and residential burglary in connection with the murder.  The last two counts of the information charged the defendant with a residential burglary and an arson committed on February 23, 1999.  The gun that fired a .380-caliber projectile, removed from Heather's brain during the autopsy, was one of the items taken in this earlier residential burglary.    

On August 13, 1999, Robert Broverman, the State's Attorney for Shelby County, executed two documents, each of which was entitled "Appointment of Special Assistant State's Attorney" and "Oath of Office."  The documents purported to pass on the prosecutorial powers that Broverman enjoyed by virtue of his office.  He wanted two Agency attorneys, Tim Huyett and Allan Lolie, to be his assistants.  Each of the documents included a notarized oath of office.  Huyett and Lolie took an oath to faithfully discharge the State's Attorney's duties.  

On August 31, 1999, a Shelby County grand jury returned a two-count indictment that supplanted the last two counts of the information.  The grand jury inquiry was not conducted by the Shelby County State's Attorney.  The grand jury proceedings that led to the indictment were conducted by Huyett.  Huyett had been administered the oath included on the document that Broverman drafted and executed in an effort to authorize Huyett's actions.  However, he was not authorized by the Shelby County board to conduct the State's business as an assistant State's Attorney and was not appointed by the circuit court to serve as a special prosecutor.  

The defendant went to trial for the criminal offenses charged in the information and the two crimes charged by way of indictment.  A Shelby County jury found him guilty of murder and home invasion for the acts that he committed on May 4, 1999, and guilty of residential burglary and arson for the conduct that he engaged in on February 23, 1999.  The defendant currently serves a 10-year term of imprisonment for residential burglary and a 55-year prison term for murder.  No judgment was entered on the other verdicts.     

The Shelby County State's Attorney did not participate in any part of the trial.  Allan Lolie and Ed Parkinson shared the task of trying the defendant.  Each is an attorney who works for the Agency.  Lolie had taken the oath that accompanied Broverman's effort to authorize his prosecutorial acts, just like Huyett.  However, Broverman had not tried to create a position for Parkinson to fill.  Parkinson was administered no oath.  Lolie and Parkinson were not court-appointed to serve as special prosecutors.  Neither was authorized by the Shelby County board to serve as an assistant State's Attorney. 

The defendant's two trial attorneys did not challenge the validity of the indictment, even though Huyett had not been court-appointed to conduct the grand jury inquiry.  Moreover, they did not question whether Huyett, Lolie, or Parkinson had any business prosecuting their client.  They allowed the trio to represent the State's interests before, during, and after the trial, without objection or complaint.  On several occasions during the course of the proceedings, the trial judge referred to Lolie and Parkinson as "special assistant State's Attorneys," a designation consistent with Broverman's effort to make Lolie his assistant.       

There is no dispute over the fact that the circuit court did not exercise its statutory authority under section 3-9008 of the Counties Code (55 ILCS 5/3-9008 (West 1998)).  None of the three Agency attorneys were appointed by court order to perform as special prosecutors.  However, the State maintains that the trial judge's recognition of Lolie and Parkinson as "special assistant State's Attorneys," coupled with the State's Attorney's effort to unilaterally appoint Lolie and Huyett, was sufficient to provide them with the authority to prosecute the case.   

Initially, we need to examine the Agency's enabling legislation as it existed at the time of this prosecution.  We need to consider the statutory grant of prosecutorial authority that our legislature had in place at that time, in order to decide whether Huyett, Lolie, and Parkinson were empowered to conduct the State's business in their capacity as employees of the Agency.  

Attorneys hired by the Agency are not constitutional officers.  Their powers are derived from the statute that created them, and those powers are strictly limited by the authority conferred upon the Agency by our state legislators.  See 
Siddens v. Industrial Comm'n
, 304 Ill. App. 3d 506, 510-11, 711 N.E.2d 18, 21 (1999).

The State's Attorneys Appellate Prosecutor's Act (the Act) (725 ILCS 210/1 
et seq.
 (West 1998)) expressly provides for those legal matters in which attorneys employed by the Agency are entitled to represent the State's interests.  The most obvious matters, consistent with the Agency's primary purpose, are criminal appeals.  The statutory grant of authority to appear on the State's behalf includes the power to assist county prosecutors in the trial of certain limited matters.  Section 4.01 of the Act (725 ILCS 210/4.01 (West 1998)) provides the scope of authority by listing those things that the Agency may be relied upon to do for local prosecutors in order to assist them in the discharge of their constitutionally based duties.  That provision used to read like this:

"The Office may also assist [c]ounty State's Attorneys in the discharge of their duties under the Illinois Controlled Substances Act [(720 ILCS 570/100 
et seq.
 (West 1998))], the Narcotics Profit Forfeiture Act [(725 ILCS 175/1 
et seq.
 (West 1998))], and the Illinois Public Labor Relations Act [(5 ILCS 315/1 
et seq.
 (West 1998))], including negotiations conducted on behalf of a county or pursuant to an intergovernmental agreement[,] as well as in the trial and appeal of said cases and of tax objections ***."  725 ILCS 210/4.01 (West 1998).

In 
People v. Ward
, 326 Ill. App. 3d 897, 902-03, 762 N.E.2d 685, 690 (2002), we interpreted this exact statutory provision and decided that the legislative enumeration of the specific trial matters upon which Agency attorneys could appear meant that those same attorneys were not authorized to assist local prosecutors with any trial matter not listed.  We held that Agency lawyers could not roam the state as special assistant State's Attorneys, able to assist on any kind of trial matter, unless the legislature provided for it.
(footnote: 1)

In 
Ward
, an Agency attorney took over the prosecution of a criminal case where the charges originated under the Cannabis Control Act (720 ILCS 550/1 
et seq.
 (West 1996)), rather than the Illinois Controlled Substances Act (720 ILCS 570/100 
et seq.
 (West 1996)).  
Ward
, 326 Ill. App. 3d at 900, 762 N.E.2d at 688.  There was no court-ordered appointment, and the county board had not authorized anyone to act as an assistant State's Attorney.  
Ward
, 326 Ill. App. 3d at 902, 762 N.E.2d at 690.  The Agency attorney was not compensated by the county, receiving only his Agency pay for the work that he put into the prosecution.  There was no question over the capacity in which he prosecuted the case.  He prosecuted it as an Agency employee assisting a local prosecutor.  Thus, we had no need to determine whether a lawyer hired to work for the Agency could have his or her statutory authority judicially expanded by an appointment as a special assistant State's Attorney.  We did not have to decide whether a court's statutory power to appoint a special prosecutor could be used to appoint an Agency attorney as a special assistant, who, in that capacity, could work on a criminal case beyond the Agency's statutory charge.  

Here, the State argues that the Shelby County State's Attorney's effort to appoint the Agency attorneys as assistants, coupled with the trial court's recognition of those attorneys as representatives of the State, served as an appointment that granted the authority to prosecute the case.  The State argues that the attorneys were effectively made court-appointed "special assistant State's Attorneys."

The defendant counters the State's argument in two ways.  First, he contests the appointment process relied upon, arguing that attorneys cannot be appointed special prosecutors by the method employed.  Second, he maintains that attorneys who work for the Agency are disqualified from criminal trial work on any matter not authorized by statute.  Therefore, he argues that Lolie and Huyett could not lawfully accept their appointments as special assistants even if those appointments were legitimate. 

We note that the State's Attorneys Appellate Prosecutor's Act provides: "The Director may, with the concurrence of the board, hire such employees, including part-time employees, as are necessary to carry out Office duties ***.  All Attorneys hired as part-time employees who devote 50% or more of their time to Office duties are prohibited from the private practice of law."  725 ILCS 210/7.02 (West 1998).  We assume that most part-time Agency attorneys maintain a private practice, servicing clients other than the Agency.  Those attorneys could take on an appointment to specially prosecute a case and charge the county a handsome fee for doing so.  Or, if they chose to, they could provide the service for free.  Many of the Agency's part-time attorneys bring with them a depth of experience in the art of prosecution and are therefore prime candidates for an appointment as a special prosecutor. As part-time Agency lawyers, they could be appointed pursuant to the statutory authority established by section 3-9008 of the Counties Code (55 ILCS 5/3-9008 (West 1998)), just like any other licensed attorney engaged in private practice.    

Conceivably, Huyett, Lolie, and Parkinson are part-time Agency attorneys who do not devote the bulk of their work to Agency duties and therefore maintain private practices.  But nothing has been offered by either party on the nature of their Agency hire.  Regardless, we think that the appointment process relied upon by the State was flawed.  

In order to examine that appointment process, we have to recognize two documents that were not a part of the record on appeal.  They were submitted by the State with a request that we take judicial notice of them.  The defendant raises legitimate concerns over whether the two documents were ever made a part of any public record, but nonetheless he asks us to consider them as a part of the record because they prove beneficial to his argument. 

The two documents represent the Shelby County State's Attorney's effort to appoint Huyett and Lolie "Special Assistant State's Attorneys."  The documents are identical in form.  Lolie's purported appointment reads as follows:

"APPOINTMENT OF SPECIAL ASSISTANT STATE'S ATTORNEY

OATH OF OFFICE

STATE OF ILLINOIS )

) ss.

COUNTY OF SHELBY )

To All to Whom These Presents Shall Come, GREETING:

Know ye, that I, 
Bob Broverman
, State's Attorney in and for the said County of Shelby, in the State of Illinois, have and do hereby appoint Allan F. Lolie, Jr.[,] of the State's Attorneys Appellate Prosecutor, as Special Assistant State's Attorney, and as such full faith and credit are due to all his official acts.

Witness my hand [the words "and testimonial" have been redacted], at 
Shelbyville
, in said County, this 
13th
 day of 
August
, A.D. 19
99
.

/s/ 
Bob Broverman

     State's Attorney

*******************************************************************

*******************************************************************

STATE OF ILLINOIS )

)ss.

COUNTY OF SHELBY )

I, Allan F. Lolie, Jr.[,] having been appointed Special Assistant State's Attorney of 
Shelby
 County, Illinois, do solemnly swear that I will support the Constitution of the United States[] and the Constitution of the State of Illinois, and that I will faithfully discharge the duties of the office of State's Attorney of said County, according to the best of my ability.

/s/ 
Allan Lolie

Subscribed and Sworn to before me this 
12th
 day of 
August
 A.D. 19
99
.

/s/ 
Karen Carmody

     Notary Public"

Huyett's purported appointment was identical, save one thing.  Karen Carmody notarized his oath a day earlier, on August 11, 1999. 

Thus, it appears that Lolie accepted his charge from the Shelby County State's Attorney on August 12, 1999, the date that the notary attests that a sworn oath was taken.  Huyett appears to have taken the oath on August 11, 1999.  We note that even if  Broverman could unilaterally create an office of Special Assistant State's Attorney, his effort to do so did not occur until August 13, 1999.  Hence, the oaths administered and taken were pointless.  Huyett and Lolie took oaths to serve in an office that was not yet in existence.  Parkinson, by way of contrast, was never appointed and took no oath at all.   

The purported appointments were not limited to the prosecution of this defendant.  The office that Broverman was trying to create was not "special" in the sense of time, case, or authority.  A "special" prosecutor is a prosecutor limited in role to a "particular cause or proceeding."  
Aiken v. County of Will
, 321 Ill. App. 171, 179, 52 N.E.2d 607, 611 (1943).  The narrowly defined role is important.  Without it, court-appointed special prosecutors could usurp constitutionally established power intended for exercise by an elected official.  See 
Tearney v. Harding
, 335 Ill. 123, 125, 166 N.E. 526, 527 (1929).   

The position of "special assistant State's Attorney" is a position unknown to our laws.  The State asks us to recognize an appointment process that would create a new hybrid office, an assistant State's Attorney who is special in several ways, but not in the way that the adjective "special" normally defines the office of special prosecutor.  First, the assistant would hold a special position never authorized by the county board.  Conceivably, the county treasury could be obligated to pay for the assistant's work despite a lack of oversight by county board members.  See 55 ILCS 5/4-2003 (West 1998).  The assistant would be a truly "special" special prosecutor by virtue of a commission to prosecute anything, anytime, anywhere–unconstrained by the bounds that universally accompany a court-appointed special prosecutor. 

If such an office could be created by the method employed in this case, a State's Attorney who, for whatever reason, did not want to perform the duties of office could simply commandeer anyone with a law license to take over.  Moreover, the number of special assistant State's Attorneys appointed under this process would be ungoverned by county boards.  Pub. Act 92-683, eff. July 16, 2002 (amending 725 ILCS 210/4.01 (West 2000)).  To be sure, the ability on the part of State's Attorneys to unilaterally appoint special assistants to handle their chores could provide Illinois with a limitless fleet of statewide prosecutors, armed with plenary powers reserved to our Attorney General and to our State's Attorneys under the constitution.  However, the law does not contemplate such an easy delegation of official duties or prosecutorial powers.

The use of special prosecutors is limited by statute.  They can be appointed by circuit court order only after a judicial determination that the elected State's Attorney "is sick or  absent, or [is] unable to attend, or is interested in any cause or proceeding."
(footnote: 2)  55 ILCS 5/3-9008 (West 1998).  While this provision could arguably allow the appointment of a special prosecutor to conduct the State's business anytime the State's Attorney wanted to go fishing, county budgetary constraints and the repository of common sense that circuit judges possess should militate against cavalier uses of a special prosecutor.  In any event, here, the circuit court was never asked to determine whether Broverman was sick, absent, or unable to attend or had any conflict of interest that prevented him, or his duly authorized assistant, from prosecuting the case.  Nothing in the record even suggests that any of the statutory criteria for the appointment of a special prosecutor existed.  

Furthermore, State's Attorneys are not at liberty, as a matter of course, to create assistant State's Attorney positions.  The Counties Code provides as follows: "Where assistant State's [A]ttorneys are required in any county, the number of such assistants shall be determined by the county board, and the salaries of such assistants shall be fixed by the State's Attorney subject to budgetary limitations established by the county board and paid out of the county treasury ***."  55 ILCS 5/4-2003 (West 1998).

While the record does not reflect how Huyett, Lolie, and Parkinson were paid for their prosecutorial work, we suspect that they offered their assistance free of any personal fee or additional Agency charge to Shelby County.
(footnote: 3)  We have seen a number of cases in southern Illinois similar to this one.  There is a simple pattern to the cases.  State's Attorneys in smaller counties, where the State's Attorneys typically possess less expertise in the prosecution of serious cases than Agency attorneys possess, have either solicited help or have gratefully accepted an offer from the Agency to assist in the trial cases.  Agency attorneys eager to try cases rather than defend the appeal of cases prosecuted by others were paid only their Agency salaries, content to assist in trials as a part of their office duties for the Agency.  We have yet to see a case where any State's Attorney or Agency attorney sought a judicial determination that a special prosecutor was warranted.  The truth of the matter is this:  Agency attorneys wanted to help try cases, the State's Attorneys wanted their help and accepted it, Agency attorneys provided professional assistance, and no one anticipated any problem with their role in providing that assistance.  The notion that they were somehow appointed to assist as special prosecutors arose when their authority to engage in trial work, other than the trial work authorized by statute, received challenge on numerous appeals. 

We conclude that there was no legitimate basis of record for any of the Agency attorneys to conduct this prosecution on the State's behalf.  

While none of the prosecution team had actual authority to advocate the State's interests, each was a licensed attorney who, while clothed with apparent authority, advanced those interests fairly, professionally, and effectively.  They did so after the Shelby County State's Attorney, through a duly appointed assistant, initiated all of the criminal charges.  Their role in the prosecution also occurred after the issues in the case were joined by the defendant's plea.  The State's Attorney who wanted them to act in his stead, and who was content for them to perform his duties, never withdrew as an attorney of record–nor did he suffer any reason for disqualification.  

The defendant's two defense attorneys found nothing wrong with the superceding indictment procured by Huyett, and they were perfectly comfortable with the trial judge's recognition of Lolie and Parkinson as representatives of the State.  As far as we know, counsel may have deliberately bypassed any challenge to their status.  They may have seen a tactical advantage in being prosecuted by people foreign to Shelby County and the prospective jurors who would decide the defendant's fate.  After all, most State's Attorneys in small southern counties know most of their constituents personally and work rather diligently to maintain a good relationship with them.  Whatever the reason behind counsels' lack of challenge to the prosecution team's authority, their inaction forfeited the defendant's right to relief, and the defendant's convictions will stand.   

There are only two things that render a judgment null and void.  A judgment is void, and hence, subject to attack at any time, only when a court either exceeds its jurisdiction or has simply not acquired jurisdiction.  
People v. Johnson
, 327 Ill. App. 3d 252, 256, 762 N.E.2d 1180, 1183 (2002).  Such is not the case here.

Subject matter jurisdiction over criminal charges is conferred upon the circuit courts by our Illinois Constitution.  "Circuit Courts shall have original jurisdiction of all justiciable matters ***."  Ill. Const. 1970, art. VI, §9.  Clearly, the trial court acquired subject matter jurisdiction when the Shelby County State's Attorney created a justiciable controversy by leveling criminal charges against the defendant and filing them with the court. 

A criminal defendant confers personal jurisdiction upon the trial court when he appears and joins the issues with a plea.  
People v. Speed
, 318 Ill. App. 3d 910, 915, 743 N.E.2d 1084, 1088 (2001).  Thus, the trial court acquired the power to hear this criminal case through the actions of a proper prosecuting authority.  The Shelby County State's Attorney initiated proceedings, filing an information charging the offenses that ultimately led to the convictions that the defendant appeals.  He participated in the defendant's arraignment, where the defendant entered a plea to those charges.  The court's jurisdiction was in place before any of the Agency attorneys appeared on the scene.  

Whether an unauthorized attorney could confer jurisdiction by initiating criminal charges and presenting them to an accused at an arraignment is not a question presented here.  The trial court in this case obtained proper jurisdiction over the defendant prior to any unauthorized acts being performed.  The trial court possessed both subject matter and personal jurisdiction over the defendant before any Agency attorney intruded upon the prosecution.

The appearance of licensed attorneys who acted on the State's behalf without the proper authority to do so did not deprive the trial court of its power to act or in any way cause any of its actions to exceed its power.  Once circuit courts obtain jurisdiction, they rarely lose it.  As noted by the Supreme Court in 
People v. Davis
, 156 Ill. 2d 149, 619 N.E.2d 750 (1993): 

"Generally, once a court has acquired jurisdiction, no subsequent error or irregularity will oust the jurisdiction thus acquired.  Accordingly, a court may not lose jurisdiction because it makes a mistake in determining either the facts [or] the law or both.  [Citation.]  ***

***

***  'There are many rights belonging to litigants–rights which a court may not properly deny[] and yet which if denied do not oust the jurisdiction or render the proceedings absolutely null and void.'  [Citation.]  Significantly, this court has held that the constitutional right to not be twice put in jeopardy for the same offense is a personal privilege which may be waived.  
People v. Scales
 (1960), 18 Ill. 2d 283, 285[, 164 N.E.2d 76]."  
Davis
, 156 Ill. 2d at 156-57, 619 N.E.2d at 754-55.

Simply put, jurisdiction is something that relates to a court's power to act, not to the rights of the parties.  See 21 C.J.S. 
Courts
 §9 (1990).  We fail to comprehend how the prosecutors' flawed station in this case could serve to deprive the court of jurisdiction and thus void the defendant's convictions, when the prosecutorial pursuit of people actually placed twice in jeopardy could not.       

The defendant relies upon 
People ex rel. Livers v. Hanson
, 290 Ill. 370, 125 N.E. 268 (1919), a 1919 supreme court decision that we cited in 
Ward
.  The author of the 
Ward
 opinion cited the aged decision in a manner that warned that it did not exactly stand for the proposition stated.  He wrote: "[T]he issue raised by defendant has not been waived.  If a case is not prosecuted by an attorney properly acting as an assistant State's Attorney, the prosecution is void and the cause should be remanded so that it can be brought by a proper prosecutor.  See, 
e.g.
, 
People ex rel. Livers v. Hanson
 ***."  
Ward
, 326 Ill. App. 3d at 902-03, 762 N.E.2d at 690.

In our case, a proper prosecutorial authority clearly performed the acts that invoked the court's jurisdiction.  The 
Ward
 opinion does not tell us who initiated the criminal charges  or who represented the State when the trial court acquired personal jurisdiction.  However, the term "void" was not used in conjunction with a jurisdictional analysis, and a question over whether or not the trial court acquired jurisdiction was not raised.  We take note of the fact that in 
Ward
, defense counsel was hardly silent about the Agency attorney's lack of authority.  As the decision points out:    

"Charles Zalar of the State's Attorneys Appellate Prosecutor's office appeared on behalf of the State and introduced himself as a special assistant State's Attorney for Hamilton County.  Defendant objected to Mr. Zalar prosecuting the case, on the basis that the State's Attorneys Appellate Prosecutor's Act [citation] did not authorize the State's Attorneys Appellate Prosecutor to prosecute the instant case.  The trial court denied defendant's objection, and Mr. Zalar remained as the prosecutor."  
Ward
, 326 Ill. App. 3d at 900, 762 N.E.2d at 688.

Thus, in 
Ward
, the defendant, through counsel, challenged the Agency attorney's presence as a representative of the State and requested his ouster.  The defect was raised, and the trial judge clearly committed error in ruling that an Agency attorney could prosecute the case.    In 
Davis
, Justice Freeman cautioned:

"The term 'void' is so frequently employed interchangeably with the term 'voidable' as to have lost its primary significance.  Therefore, when the term 'void' is used in a judicial opinion it is necessary to resort to the context in which the term is used to determine precisely the term's meaning."  
Davis
, 156 Ill. 2d at 155, 619 N.E.2d at 754 (citing 
Herb v. Pitcairn
, 384 Ill. 237, 241, 51 N.E.2d 277, 279-80 (1943), 
rev'd on other grounds
, 325 U.S. 77, 89 L. Ed. 1483, 65 S. Ct. 954 (1945)).

When we turn to 
Hanson
 to examine the context in which the 1919 supreme court used the term "void," we discover that it did not use the term at all.  Indeed, the supreme court did not even address a jurisdictional question.  The case involved the review of a ruling that sustained the State's demurrer to the appellants' plea that the Hardin County State's Attorney labored under a conflict of interest.  It was put to the trial court that the State's Attorney had previously represented the appellants on the very matter that formed the basis for the 
quo warranto
 action that his assistant was trying to maintain on the State's behalf.  There was clearly no waiver of the issue.  The supreme court reviewed the conflict-of-interest question initially raised in the trial court and concluded, "The court committed reversible error in sustaining the demurrer to this plea."  
Hanson
, 290 Ill. at 373, 125 N.E. at 270.    

The court then proceeded to provide direction to the parties on how the State should be represented on remand.  The State's Attorney had attempted to unilaterally appoint an assistant to handle the matter, just like Broverman attempted to appoint Huyett and Lolie.  The court pointed out, as we have done herein, "There is no such office as assistant State's [A]ttorney until the county board has determined that an assistant State's [A]ttorney is required."  
Hanson
, 290 Ill. at 373, 125 N.E. at 270 (citing Ill. Rev. Stat. 1917, ch. 53, par. 8j).  It advised that the Attorney General would have to conduct any further proceedings on the matter, noting as follows: 

"[T]his proceeding cannot be prosecuted by said [assistant State's Attorney], first, for the reason that he was not at the time an assistant State's [A]ttorney[,] and second, for the reason that his superior is disqualified and therefore he is disqualified."  
Hanson
, 290 Ill. at 374, 125 N.E. at 270.

Clearly, the supreme court did not rule that a conviction obtained by an assistant State's Attorney who is not properly appointed is a void by-product of the assistant's unauthorized actions. 

Hanson
 does not stand for the proposition that an attorney's lack of authority to prosecute constitutes a jurisdictional defect that renders a conviction procured by that attorney null and void.  It is impossible to read that decision and glean such an idea from it.  
Hanson
 had to be cited in 
Ward
 to provide the reader a similar case that demonstrated 
how a flaw in an assistant State's Attorney's station cannot be ignored and must be addressed when raised.  Because David Ward's attorney raised the question of authority to prosecute in the trial court and the trial court allowed the prosecution to proceed, David Ward was entitled to relief. 

Ward
 should not be read as the source of a novel jurisdictional rule that would void all convictions procured by licensed attorneys who, for whatever reason, mistakenly believe that they are authorized to act on the State's behalf and who are permitted to do so by those being prosecuted.  Any defect in an attorney's appointment process or in his or her authority to represent the State's interests on a given matter is not fatal to the circuit court's power to render a judgment.  The right to be prosecuted by someone with proper prosecutorial authority is a personal privilege that may be waived if not timely asserted in the circuit court. 

The defendant relies upon one other Illinois case in support of his position that the Agency attorneys' lack of authority to prosecute should render his convictions null and void. The case deals with a prosecution that constituted the unauthorized practice of law. 

In 1997, Elvis E. Dunson contested, without the help of an attorney, two disorderly conduct charges.  
People v. Dunson
, 316 Ill. App. 3d 760, 761, 737 N.E.2d 699, 700 (2000).  He was convicted and placed on probation for two years.  David Salafsky presented the State's case and represented its interests.  He acted in his capacity as a duly appointed assistant State's Attorney for Winnebago County.  It is unclear whether he lied about his Illinois law license in order to get the job or whether he lost it through discipline after his hire and did not disclose that fact.  Whether or not he ever earned the right to represent another's legal interests in the courts of this State, he did not hold that license when he prosecuted Dunson.  He was later convicted of a series of serious crimes.  

Dunson hired a licensed lawyer to collaterally attack his convictions two years after Salafsky procured them through his unauthorized practice of law.  
Dunson
, 316 Ill. App. 3d at 761-62, 737 N.E.2d at 700.  In 
Dunson
, the court held that Dunson's convictions were capable of collateral challenge (
Dunson
, 316 Ill. App. 3d at 763, 737 N.E.2d at 701-02), that a prosecution by a prosecutor who did not hold an Illinois law license renders convictions void as a matter of common law (
Dunson
, 316 Ill. App. 3d at 764, 737 N.E.2d at 702), and that Dunson did not have to demonstrate that David Salafsky's conduct caused Dunson any harm (
Dunson
, 316 Ill. App. 3d at 767-68, 737 N.E.2d at 705).  In this case, the defendant reasons that if a prosecution by a validly appointed assistant State's Attorney without a valid law license works to void a conviction, then a prosecution by a validly licensed attorney without the valid authority to represent the State's interests should also void a conviction.    The decision in 
Dunson
 was framed to address a public policy consideration that we do not confront here.  That consideration deals with the protection of the public from imposters engaged in the unauthorized practice of law.  See 
Dunson
, 316 Ill. App. 3d at 763-64, 737 N.E.2d at 702.  It underlies a host of decisions, primarily rendered in civil cases, that adhere to the rule that any judgment obtained through the unauthorized practice of law is void.  See 
Leonard v. Walsh
, 73 Ill. App. 2d 45, 220 N.E.2d 57 (1966); 
Janiczek v. Dover Management Co.
, 134 Ill. App. 3d 543, 481 N.E.2d 25 (1985); 
Marken Real Estate & Management Corp. v. Adams
, 56 Ill. App. 3d 426, 371 N.E.2d 1192 (1977).  When the State argued that the principle derived from these civil cases was inapplicable to a successful criminal prosecution, its design being to protect people, rather than the State, from unqualified legal representation, the appellate court wrote: 

"[A]re the People of the State of Illinois less worthy of protection from incompetent legal representation and charlatans than private persons engaged in civil litigation? We think not.  The State *** grossly misapprehends the common law of this State in attempting to minimize the deception practiced upon the court and upon the public.  The criminal prosecution of an accused by the State through a representative who is unauthorized to practice law can be neither ignored nor condoned."  
Dunson
, 316 Ill. App. 3d at 763-64, 737 N.E.2d at 702.

Our case is not one where the assistance rendered, even though it was beyond the statutory charter to assist, inflicted any fraud upon the court or the public.  The State was represented competently by attorneys who earned the right to practice law in this state.  There was no deception about their license to appear and represent someone else's interests in an Illinois courtroom.   

The policy that underlies the invalidation of judgments procured through the unauthorized practice of law is not in play here.  The promotion of that policy was instrumental in allowing Dunson collateral relief, despite the fact that he was unable to show that he suffered any harm.  

The defendant has not attempted to demonstrate the harm visited upon him by his prosecutors' defective commission to prosecute.  For that matter, he does not even claim that anything evil or wrong occurred in the process to verdict other than that defect.  To the extent that the Agency attorneys' lack of proper authority to prosecute somehow inflicted injury, it was a wound that the defendant invited by allowing their presence to go unchallenged.  We find no reason to overturn the defendant's convictions. 

Accordingly, we affirm.          

Affirmed.

CHAPMAN and GOLDENHERSH, JJ., concur.

                                      NO. 5-00-0478

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Shelby County.

)

)  No. 99-CF-68

)

ROBERT WOODALL, )  Honorable

)  Patrick J. Hitpas,

     Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: September 17, 2002

___________________________________________________________________________________

Justices
: Honorable Clyde L. Kuehn, J.

Honorable Melissa A. Chapman, J., and

Honorable Richard P. Goldenhersh, J.,

Concur

___________________________________________________________________________________

Attorneys
 Daniel M. Kirwan, Deputy Defender, Larry R. Wells, Assistant Defender, Office

for
 of the State Appellate Defender, Fifth Judicial District, 730 E. Ill. Hwy. 15, P.O. Box

Appellant
 2430, Mt. Vernon, IL 62864-0047

___________________________________________________________________________________

Attorneys
 Hon. Allan Lolie, State's Attorney, Shelby County Courthouse, Shelbyville, IL 

for
 62565; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Rebecca

Appellee
 E. McCormick, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor,

Route 15 East, P.O. Box 2249, Mt. Vernon, IL 62864

___________________________________________________________________________________

FOOTNOTES
1:
The legislature has done precisely that.  While this appeal, and several others like it, were under advisement, our legislators passed legislation to significantly broaden the Agency's power to assist local prosecutors in the discharge of their duties.  The legislation (Public Act 92-683) was enacted into law on July 16, 2002.  The new statutory commission allows State's Attorneys to delegate their duties to Agency attorneys on any kind of criminal case, in a manner very much akin to what the Shelby County State's Attorney wanted to do here.  Agency attorneys are now authorized to appear on the State's behalf anytime they are requested to do so by the State's Attorney.  

The new provision also provides for a significant departure from the restrictions that formerly constrained the replacement of the elected State's Attorney with a special prosecutor (see 55 ILCS 5/3-9008 (West 1998)).  The circuit court may now appoint Agency attorneys as special prosecutors, without a prior determination that the State's Attorney has a conflict of interest or is otherwise unable to attend or perform his or her official duties.  The new appointment power enables the circuit court to remove the elected State's Attorney from a given case and replace him or her with an attorney hired by the Agency.  When such a special prosecutor is appointed, the Attorney General can elect to replace the special prosecutor with one of his or her assistants. 

The newly adopted procedures that enable the Agency and its attorneys to specially prosecute criminal cases are instructive.  Unlike the effort to appoint Lolie and Huyett special assistant State's Attorneys, the statutory use of Agency attorneys as special prosecutors is limited to a specific criminal case or criminal investigation.

Section 4.01 has been amended to provide as follows:

"[T]he Office and all attorneys employed by the Office may also assist State's Attorneys in the discharge of their duties in the prosecution and trial of other cases when requested to do so by, and at the direction of, the State's Attorney otherwise responsible for the case.  In addition, the Office and all attorneys employed by the Office may act as Special Prosecutor if duly appointed to do so by a court having jurisdiction.  To be effective, the order appointing the Office or its attorneys as Special Prosecutor must (i) identify the case and its subject matter and (ii) state that the Special Prosecutor serves at the pleasure of the Attorney General, who may substitute himself or herself as the Special Prosecutor when, in his or her judgment, the interest of the people of the State so requires."  Pub. Act 92-683, eff. July 16, 2002 (amending 725 ILCS 210/4.01 (West 2000)).

2:
A determination that one of these criteria exists prior to the appointment of a special prosecutor does not appear to apply to Agency attorneys under the recent amendments to the Act.

3:
Counties do contribute to the Agency's funding in return for those services that the Agency is statutorily authorized to provide.  725 ILCS 210/9, 10 (West 1998). 

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 09/17/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.